ing it, and then incumbent on Lambert, as the surety's indemnitor, to comply with his contract by paying the surety the amount disbursed by it to remove the lien.

The last complaint, with the exception of alleged preferences given to some of the furnishers of material, in which there is no merit, is that the surety should have been allowed judgment against its indemnitor for attorney's fees for defending this proceeding and suing the indemnitor. The surety is not entitled to such judgment in this instance. We know of no statute authorizing the awarding of attorney's fees in such an instance as this. The contract of indemnity was apparently lost before the trial, and therefore is not before us. The substance of it was not proved. An attempt was made to show by Lambert that it contained a clause relative to attorney's fees, but he distinctly answered that he did not remember whether it did or not.

For the foregoing reasons, the judgment appealed from is affirmed.

O'NIELL, C. J., absent during the argument.

(120 So. 275)

No. 27990.

**JORDAN v. FILMORE.**

Succession of MILES.

Jan. 2, 1929.

Rehearing Denied Jan. 28, 1929.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellants.

Madison & Madison, of Bastrop, for appellee.

O'NIELL, C. J. Mrs. Julia B. Miles died in Los Angeles, Cal., on the 5th of December, 1925, leaving an estate in Louisiana, consisting of a plantation in Morehouse parish, worth $50,000, cash on deposit in a bank there, amounting to $2,300, a credit for $125, and property in Sabine parish, the value of which is not shown by the record. There are two heirs to the succession, namely, Mrs. Pearl Miles Reilly, known professionally as Charlotte Shelby, who is the daughter of the deceased, and Mrs. Hazel Minter Jordan, who is the granddaughter, being the only child of a predeceased daughter, of Mrs. Miles. The two heirs are therefore forced heirs of Mrs. Miles, and would have inherited her estate equally if she had died intestate.

On the 13th of November, 1925, Mrs. Miles

attempted to donate the plantation in Morehouse parish to Mrs. Margaret Shelby Filmore, a daughter of Mrs. Reilly, by an instrument in the form of a sale for $10. Mrs. Jordan brought suit against Mrs. Filmore to annul the donation on the ground that it was not valid in form, the instrument being not an authentic act, and there being no acceptance by authentic act. Mrs. Shelby intervened in the suit, and claimed the whole estate of her mother, under the latter's will, which is as follows:

"Los Angeles, Cal.

"Saturday, 21st Feb. 1925.

"This my last will and testament. This is to certify that my beloved daughter Pearl Miles Reilly, known as Charlotte Shelby, is to have and to hold and fall heir to all my belongings whatsoever, real estate, moneys, personal property, wherever located, and I further name and appoint her my Executrix.

"[Signed] Julia B. Miles.

"Witness: Chauncy T. Eaton."

Mrs. Shelby filed the will in court with a petition asking that it be admitted to probate and that she be permitted to qualify as testamentary executrix. Mrs. Jordan opposed the probate of the will and questioned its validity on several grounds. She disputed also Mrs. Shelby's right and qualification to be confirmed as executrix, and claimed that she, Mrs. Jordan, should be appointed administratrix. In her petition, praying for annulment of the will and opposing its probate, Mrs. Jordan prayed that she and Mrs. Reilly should be recognized as the forced heirs of Mrs. Miles, and that her estate should be divided equally between them. Mrs. Jordan's suit against Mrs. Filmore and Mrs. Jordan's opposition to the probate of the will of Mrs. Miles were, by mutual consent, consolidated and tried together; and, after hearing the evidence, the court rendered judgment, annulling the donation which Mrs. Miles had made to Mrs. Filmore, of the plantation in Morehouse parish,

and at the same time the court gave judgment declaring the will of Mrs. Miles valid, but reduced the legacy of Mrs. Reilly to a half of the estate, on the theory that, as there were two forced heirs, the disposable portion was only a half of the estate, and, as the testatrix did not declare in her will that she intended the legacy of the whole estate to be an extra portion, Mrs. Reilly could take only a half of the estate—either as heir or as legatee. The court, therefore, in its judgment, decreed that Mrs. Jordan was entitled to a half of the estate; and, in the decree, the court reserved to each of the heirs, Mrs. Reilly and Mrs. Jordan, the right to demand collation from each other, for any donation that might have been made to either of them by Mrs. Miles during her lifetime, and to assert or resist any claim for an indebtedness due from or to the estate.

The effect of the judgment, declaring Mrs. Jordan to be entitled to half of the estate, was the same as if the court had declared the will null—except that Mrs. Reilly was allowed to perform the duties of executrix. She and Mrs. Filmore appealed from the decision. As Mrs. Jordan did not appeal, or file an answer to the appeal taken by Mrs. Reilly and Mrs. Filmore, the judgment is final in so far as it decrees the will to be valid. It is conceded by the appellants, Mrs. Reilly and Mrs. Filmore, that the judgment is correct in so far as it decrees the nullity of the donation to Mrs. Filmore of the plantation in Morehouse parish, and in fact that the judgment is correct in every respect except in so far as it reduces the legacy of Mrs. Reilly of the whole estate to only a half of the estate. It is conceded also by the appellants that Mrs. Jordan is entitled to a fourth of the estate as a forced heir, and, therefore, that the legacy of the whole estate to Mrs. Reilly should be reduced to three-fourths. The only question to be decided is whether Mrs. Jordan is entitled to only a fourth of the estate, as a forced heir, or is entitled to a half of the estate on the theory that the testatrix did not declare in unequivocal terms in her will that her intention was to leave the estate to Mrs. Reilly "as an advantage or extra portion." The issue in the case is stated in the brief filed on behalf of Mrs. Jordan, thus:

"The question in this case is not, as stated by counsel for appellant, whether, under the circumstances, your honors can conclude that the donor intended her daughter [Mrs. Reilly] to be privileged over her granddaughter [Mrs. Jordan], but is, whether or not, under the wording of the will which was executed by the testatrix and duly proved, the testatrix expressed in terms of unequivocal meaning, or in express terms, an intention to give her daughter, Pearl Miles Reilly, all of the disposable portion of her estate as an extra portion; and we believe that your honors will search the will in vain for any language showing any such intention or inference; and, as stated before, the apparent intention of the testatrix was to disregard the law of Louisiana in reference to inheritance and give all of her property to one forced heir to the entire exclusion of the other heir."

The attorneys for Mrs. Jordan cite and rely upon the following articles of the Civil Code, under the title "Of Collations," viz.:

"Art. 1228. (1306) * * * Children or grandchildren, coming to the succession of their fathers, mothers or other ascendants, must collate what they have received from them by donation inter vivos, directly or indirectly, and they cannot claim the legacies made to them by such ascendants unless the donations and legacies have been made to them expressly as an advantage over their coheirs, and besides their portion.

"This rule takes place whether the children or their descendants succeed to their ascendants as legal or as testamentary heirs, and whether they have accepted the succession unconditionally, or with the benefit of inventory."

"Art. 1229. (1307) * * * The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from their succession."

"Art. 1230. (1308) * * * Collation must take place, whether the donor has formally ordered it, or has remained silent on the subject; for collation is always presumed, where it has not been expressly forbidden."

"Art. 1231. (1309) * * * But things given or bequeathed to children or other descendants by their ascendants, shall not be collated, if the donor has formally expressed his will that what he thus gave was an advantage or extra part, unless the value of the object given exceed the disposable portion, in which case the excess is subject to collation."

"Art. 1233. (1311) * * * The declaration that the gift or legacy is intended as an advantage or extra portion, may be made in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor." ·

The attorneys for Mrs. Jordan rely also upon article 1493 of the Civil Code, which limits the disposable portion of an estate to two-thirds if the donor or testator leaves one child, one-half if he leaves two children, and one-third if he leaves three or more children; and they rely particularly upon article 1501, under the title "Of the Disposable Portion and the Légitime," viz:

"Art. 1501. (1488) * * * The disposable quantum may be given, in whole or in part, by an act inter vivos or mortis causa, to one or more of the disposer's children or successible descendants, to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion.

"This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witnesses.".

■■ There is some confusion in the jurisprudence on this subject, due to the failure of the court in some cases to observe the distinction between "collation," which a descendant heir may demand of his coheir, and the reduction of an excessive donation or legacy to the disposable portion, which reduction the forced heirs may demand of any donee or legatee. The difference between the right to demand collation and the right to demand a reduction of an excessive donation or legacy to the disposable portion is that collation can be demanded only from a coheir, but does not depend upon the extent of the inequality in the disposition of the ancestor's estate; whereas the right to demand a reduction of an excessive donation or legacy to the disposable portion may be demanded from any donee or legatee—whether he be an heir or a stranger— but it can be demanded only when—and to the extent that—the donation or legacy exceeds the disposable portion. The right to claim collation, strictly speaking, arises only from a donation made or an advantage given to a prospective heir by his ancestor during the latter's lifetime, and not from a legacy given by last will. That is rendered certain by the theory or presumption on which the obligation of an heir to collate is founded, as explained in articles 1228 and 1229 of the Code; that is, that what is given by ancestors to their offspring is presumed to be given "in advance of what they might one day expect from their succession." It would be absurd to say that what is given by last will and testament, by an ancestor to his offspring, is presumed to be given *in advance of what the leg-*

*atee might one day expect from his ancestor's succession.* The absurdity seems to have been overlooked in the writing into articles 1228, 1229, 1231, 1232 and 1233 such expressions as "donations and legacies" and "given or bequeathed." The same confusion of terms appeared in article 843 of the Code Napoléon, from which article 1228 of the Revised Civil Code of Louisiana—article 1306 of the Code of 1825—was translated; but the confusion in article 843 of the French Code, which made it seem that collation was applicable to testamentary dispositions, as well as to donations inter vivos, was removed by legislation, by the Act of March 24, 1898. The article, originally, declared:

"Every heir, even beneficiary, coming to a succession, must bring to his co-heirs all that he has received from the deceased, by donation inter vivos, directly or indirectly; he cannot retain the gifts or claim the legacies given to him by the deceased, unless the gifts and legacies had been made to him expressly as an advantage over his coheirs and besides his portion, or with dispensation from collation."

The first part of the article would leave no doubt that collation is applicable only to donations inter vivos, and not to testamentary dispositions, but for the use of the word "legacies," along with the word "gifts," in the last part of the article. The purpose and effect of the amendment of the article, by the Act of March 24, 1898, was to make it plain that the obligation of an heir to collate, in the absence of an express exemption from collation, is applicable only to donations inter vivos, and is not applicable to legacies given by testament unless the testator has declared that the legacy is not given as an advantage or extra portion. As amended by the Act of March 24, 1898, article 843 of the French Code now reads:

"Every heir, even beneficiary, coming to a succession, must bring to his co-heirs all that he has received from the deceased by donations inter vivos, directly or indirectly; he cannot retain the gifts made to him by the deceased unless they were made to him expressly as an advantage over his co-heirs and besides his portion, or with exemption from collation.

"The legacies made to an heir are reputed (held to be) made as an advantage over other heirs, and as an extra portion, unless the testator has expressed a contrary intention, in which case the legatee cannot claim his legacy except by taking less."

Article 1501 of the Revised Civil Code of Louisiana, which was article 1488 of the Code of 1825, was taken, though not literally, from article 919 of the French Code, which provides:

"The disposable portion may be given in whole or in part, be it by act between living persons or by testament, to the children or other heirs [successibles] of the donor, without being subject to collation by the donee or legatee coming to the succession, provided that as to the gifts the disposition was made expressly as an advantage over other heirs and as an extra portion.

"The declaration that the gift is made as an advantage over other heirs and as an extra portion may be made either by the act which contains the disposition, or subsequently according to the forms of donations inter vivos or testaments."

Article 1501 of the Louisiana Code indicates, more plainly than article 919 of the French Code, that it is only when the disposable portion is given to a prospective heir by donation inter vivos, and not when it is given to an heir by testament, that it must be expressly declared to be given as an advantage or an extra portion, in order to exempt the donee from the obligation of *collation*, strictly so called; for article 1501 provides that such a declaration must be made by the *donor*, to avoid the obligation of the donee to

collate. There is no indication in article 1501 —for there would be no sense in the requirement—that a testator who bequeaths more of the disposable portion of his estate to one of his descendant heirs than to another must express, any more plainly than his favoritism itself expresses, his intention that the legacy bequeathed to the favored heir is intended as an advantage over the other heir, or as an extra portion—in order to avoid the obligation of collation, strictly so called. All that the testator has to do in the distribution of his estate among his heirs as he sees fit, to be sure that his will shall be carried out, is to avoid impinging upon the légitime which the law reserves to each of his forced heirs.

Another significant difference between the provisions of the French Code and those of the Louisiana Code on this subject is that, in the second paragraph of article 919 of the French Code, it is required that the declaration that a donation is given as an advantage over other heirs, or as an extra portion, must be made according to the form either of a donation inter vivos or of a testament, if the declaration is made subsequent to the making of the donation itself; whereas, in article 1232 and in the second paragraph of article 1501 of the Louisiana Code, it is only required that the declaration shall be made by an act executed before a notary public and two witnesses, if it is made by an act subsequent to the making of the donation itself. Surely, if such a declaration had to be made in order to give effect to a testamentary disposition, as well as to give effect to a donation inter vivos, of an *extra portion* of an estate, it would have to be made in one of the forms prescribed for the making of testaments when made for the purpose of giving effect to a testamentary disposition of an extra portion of an estate.

What we have said, however, is perhaps not so much to the point as is the fact that there is no such article in the French Code as ar-

ticle 1233 of the Louisiana Code, which provides that the declaration that a donation "is made as an advantage or extra portion" need not be expressed in those words, but "may be made in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor."

Notwithstanding the differences which we have pointed out, between the provisions of the French Code and those of the Louisiana Code, on the subject of collation, the jurisprudence in France—and the opinions of some of the commentators—maintained, before article 843 of the French Code was amended by the Act of March 24, 1898, that an exemption from collation was not required to be expressed in any sacramental terms, but might be inferred from the language of the instrument, and was necessarily inferred in the case of an universal or a residuary legacy. In Dalloz's Annotated Codes, we find the following notes to article 843, viz. :

"No. 75. Incontestably, it is not necessary that the exemption or dispensation from collation be formulated in sacramental terms.

"No. 76. And dispensation or exemption [from collation] may be formulated in any manner whatever, provided the term used does not leave any doubt about the disposer's intention.

"No. 77. But, does the necessity of an express exemption imply the necessity of a formal declaration and ad hoc, inserted in the act by which the disposer manifested his intention or will?

"No. 78. Following many writers, all tacit dispensation, that is, resulting from circumstances and the merely presumed intention of the donor, is ineffectual.

"No. 79. Following the jurisprudence and certain authors, the exemption from collation may result not only from a literal and special declaration but also from comparing and reconciling the different clauses of the act, *from*

*the nature and character of the disposition*," etc. (The italics are ours.)

"No. 118. The exemption from collation may result, not only from the whole of the different and several clauses, but from the very nature of the disposition.

"No. 119. Following the unanimous opinion, the heir was virtually discharged from collation (in the legislation anterior to the law of March 24, 1898) when the disposition made in his favor was an universal legacy.

"No. 120. Consequently, the universal disposition made in favor of one heir imputed itself in full right upon the disposable portion."

There are two decisions by this court which are so decisive of this case that they would have to be overruled if we should affirm the judgment appealed from, namely, Miller v. Miller, 105 La. 257, 29 So. 802, and Succession of Maltry, 161 La. 1032, 109 So. 827. In Miller v. Miller, the testator had, when he made his will, three sons, a daughter, and two grandchildren, the latter being the only children of a deceased son of the testator. He bequeathed $20,000 to each grandchild and the balance of his estate to his children living at the time of his death, share and share alike. One of the sons died, unmarried, before the death of the testator. Another son died eight days after the death of the testator, leaving a will in which he instituted his brother and sister as his universal legatees. One of the grandchildren died, intestate and unmarried, before the death of the testator. The estate was valued at $435,904.84. The testator declared in his will that he had previously given $8,000 in money and real estate to the father of his two grandchildren. After the death of the testator the tutor of the surviving grandchild claimed that the grandchild, as a forced heir of the testator, was entitled to her légitime, amounting to one-fourth of two-thirds of the estate, and was also entitled to receive the legacy of $20,000 out of the disposable portion of the estate. The disposable portion of the estate was one-third. It was conceded that the legacy of the entire residue of the estate to the sons and daughter of the testator should be reduced, not to one-third of the estate, but only to the extent sufficient to leave to the grandchild her share of the légitime, or one-fourth of the two-thirds of the estate. The court held that if the grandchild had not demanded a reduction of the residuary legacy to the disposable portion, and had accepted the legacy of $20,000, the grandchild could not be compelled to collate the $8,000 given to the grandchild's father by the testator during his lifetime, but that, by claiming her légitime, the grandchild was obliged to collate the $8,000 and that the grandchild could not claim the legacy of $20,-000 without deducting it from her légitime. The opinion rendered by Chief Justice Nicholls is perhaps the most logical dissertation in the jurisprudence on the difference between collation, strictly speaking, and the reduction of an excessive donation or bequest to the disposable portion, viz.:

"The testator made no express declaration in the will as to his intention in reference to either the bequest to the minor or to that to the other heirs. We do not see in the situation of this succession anything which would make such a declaration needed. His will dealt with his entire succession, and that instrument expressed very clearly the precise amount he desired his heirs should take in it and out of it. Rev. Civ. Code, arts. 1232, 1233, 1501. We have to construe his intention by the light of its general provisions and of the law, of which he is to be presumed to have had knowledge, and by which he must be presumed to have been guided. We must assume that the testator was aware of the legal rights of his heirs, and the extent of his own power of disposition of his property. The deceased, by his will, conveyed to his children the whole of his estate, subject to the possibility of a

claim being made by the minor—forced heir—for her légitime. The forced heir has the option to claim his rights or not, and the will was executed in favor of the other heirs from that standpoint, and was so accepted by them. The exercise by the forced heir of his right to claim the légitime would simply render that portion of the will extending over that portion of the estate ineffective to the extent the minor could legally exact it. If the situation of a succession be such as to enable all of the heirs to receive their légitime, no one of the heirs has legal ground for complaint if the testator, in the matter of the disposable portion, should have thought proper to discriminate in favor of one or more heirs against another. There is no illegal inequality in the disposal of the disposable portion. The testator can dispose of it as it suits him. All we are called on to do is to ascertain his intentions and enforce them. We think his intention and wish are clear—that the whole estate, less $20,000 to be first paid to the minor, should vest in his other children, share and share alike, subject to the possibility of a demand by the minor forced heir for her légitime, and subject to the legal enforcement of her rights in respect to the same in manner, form, and to the extent as provided by law. The will must stand as it is until attacked and set aside or modified on a demand made by the minor, as a forced heir, that she was entitled to receive her légitime.

"We do not see how it can be claimed, in view of the express provisions of the Revised Civil Code, that the death of a party leaving descendants has the effect, ipso facto, of depriving the testator of the ownership in property which belonged to him at that moment. The law does not, by the force of its own will, immediately, by the fact of death, transfer a portion of the estate to what are known as 'forced heirs.' It will be observed that articles 1493–1495 of the Revised Civil Code do not purport to make any change in the owner-ship of the property of the testator, and simply prohibit him from disposing of it to a certain extent 'to the prejudice of heirs' holding certain relations to the deceased. He is at liberty to dispose of the whole property, subject, however, to the right of these heirs, if they feel themselves aggrieved, to have the will set aside to the extent necessary to secure to them, as forced heirs, the legal portion coming to them. They are at liberty to make this claim only if they think proper to do so. If they do not make the claim, the ownership conveyed by the will is maintained. It is often supposed that by the term 'forced heirs' the law has created a special kind of heirs, separate and distinct from the three kinds of heirs mentioned in article 879 of the Revised Civil Code, so that that article should read: 'There are four (not three) kinds of heirs, which correspond with four (not three) species of succession, to wit: Testamentary or instituted heirs; legal heirs or heirs of the blood; irregular heirs; forced heirs.' This is a mistake. What are termed 'forced heirs' are nothing more than certain legal heirs who by reason of their relationship to the deceased have had reserved to them the right to claim, as heirs, if they so elect, a certain proportion of the property of the deceased, and which he may have disposed of 'to their prejudice.' Article 1495, in referring to these heirs, simply declares that they are called 'forced heirs,' and assigns the reason for their being so called. They are not forcedly made heirs by the law, nor is the action of the deceased in disposing of his entire property forcedly and absolutely null. His action in so doing is only subject to successful attack by these forced legal heirs, under proper conditions and circumstances, when legally claimed and established.

"In this particular case it is claimed on behalf of the minor that she is entitled to take the full amount of the légitime coming to her, regardless of the amount of $8,000 which her

father in his lifetime had received from his own father. It is urged that these $8,000 under the situation disclosed by the will, must be held to have been intended by Miller to be taken as a donation to the father from the disposable portion of his estate, free from collation; that he did not intend to force the minor into the position of considering this amount as having been received by her father simply as an 'avancement d'horie' upon his légitime, and as having therefore to be 'imputed' as a partial payment upon the minor's légitime. Appellants insist that this amount of $8,000 received by the father cannot be ignored in the settlement of the succession; that it must be deducted from the amount coming to the minor from the légitime. Article 1240 of the Revised Civil Code declares that if 'a grandchild comes into the succession only by right of representation he must collate what has been given to his father, even though he should have renounced his succession.' As applied to the légitime, we think the word 'impute,' rather than the word 'collate,' should be used. 12 Laurent, § 171. The word 'collation,' in strictness, is applied only to donations inter vivos (Dalloz & Verge, under 843, No. 1), and the obligation of collation is founded on the equality which should be naturally between children and other lawful descendants (Rev. Civ. Code, art. 1229). The légitime is a constant fixed by law in favor of each heir's part thereof. Delvincourt (volume 2, p. 218) says: 'La légitime n'est pas due en masse à tous les légitimaires, mais a chacun d'eux pour sa part, et celui qui a tout ce qui doit lui revenir dans l'indisposable ne peut attaquer ni faire reduire les liberalites.' "

In the Succession of Maltry, the testator left three children, a son by his first marriage and two daughters by his second marriage, and had also a stepdaughter. The disposable portion was a third of his estate. He declared in his will that he gave to his step-

daughter one half of the disposable portion of his estate, and to his two daughters, or to the survivor of them, the other half of the disposable portion of his estate, and he provided that, if the stepdaughter should not survive him, all of the disposable portion of his estate should go to the two daughters, or to the survivor of them, and that, if they should both die without issue, all of the disposable portion of the estate should go to the stepdaughter; and he bequeathed the balance of his estate to his three children. They and the stepdaughter survived the testator. The son sued to compel his sisters to collate the legacy of one-half of the disposable portion of the estate, on the ground that the testator had not declared that the legacy was given as an advantage or extra portion. The son conceded, of course, that the legacy of one-half of the disposable portion of the estate to the testator's stepdaughter was not subject to collation, because she was not an heir of the testator. The suit was dismissed on an exception of no cause or right of action, and the judgment was affirmed, on the ground that there was no necessity for the testator to declare in his will that the legacy of one-half of the disposable portion of the testator's estate, given to his two daughters, was intended as an advantage over the son, or as an extra portion. In the course of the opinion rendered, the court referred to and reconciled or explained away all of the decisions which are now relied upon by Mrs. Jordan in this suit, viz.: Succession of Ford, 130 La. 442, 58 So. 141; Succession of Williams, 132 La. 865, 61 So. 852; Succession of Fath, 144 La. 463, 80 So. 659; and Succession of Ledbetter, 147 La. 771, 85 So. 908.

In the Succession of Ford, the testator left four children of his first marriage and six children of his second marriage. He declared in his will that he bequeathed all of his property to the six children of his second marriage, share and share alike, and, declaring

that he had already given one-half of all of his property to the four children of his first marriage in settlement of their claims against his estate, he bequeathed $1 to each of them. They sued to compel the six children of the second marriage to collate the whole estate, on the ground that the testator had not expressed the intention to confer an advantage upon them, or to give them an extra portion; and the court ruled accordingly. Assuming that the court's interpretation of the language of the will was correct, and that the testator did not intend to give the children of his second marriage an advantage, or an extra portion, over the children of his first marriage, the decree was correct; but, in so far as the author of the opinion dealt with the case as if the residuary legatees were obliged to *collate*, according to the technical meaning of the word, and as if a testator must, in order to avoid the obligation of *collation*, express in an universal or a residuary bequest given to one of his children—any more than the very nature of the bequest itself expresses— the intention to give the legatee an advantage or an extra portion, the decision is wrong, and ought to be considered overruled by the decision in the Succession of Maltry.

In the Succession of Williams, the testator was survived by his wife and seven children. He declared in his will that he bequeathed the usufruct of his estate to his wife, excepting his farm, which he bequeathed to his two sons, and he stipulated that, after the death of his wife, his property should be divided among his seven children. The five daughters attacked the will on the ground that its language was vague, contradictory, and irreconcilable, and on the further ground that no extra portion was bequeathed to their brothers. The court construed the will as giving only the usufruct of the farm to the two sons, and required the legacy to be reduced in so far as it exceeded the disposable portion. As far as the opinion seems to maintain that the two

sons of the testator were obliged to *collate*, in the technical sense of the word, so as to equalize the inheritance among the seven children of the testator, the opinion cannot be reconciled with the opinion expressed in Miller v. Miller and in the Succession of Maltry, and is wrong and must be henceforth considered overruled.

In the Succession of Fath, both the law and the facts of the case appear to be stated accurately, and the only error in the decision seems to be that the court failed to apply the law, as stated, to the facts. We are not concerned with the question of correctness or incorrectness of the decision of that particular case. It seems that the court overlooked the fact that the testatrix gave the residuum of her estate to the six children of her deceased son Christopher, after having given the all of her real estate in Algiers. The residuary legacy should have been reduced to the disposable portion—that is, only to the extent sufficient to leave to each of the other forced heirs his or her share of the légitime; for the two legacies were not subject to *collation*, technically so called. The légitime which each one of several forced heirs may demand, in case of an excessive donation or legacy, is not the whole of the "reserved portion," but is only each heir's proportionate share of the "reserved portion." That is explained in the quotation from Delvincourt, vol. 2, p. 218, in Miller v. Miller, 105 La. 263, 29 So. 805, which, as translated, declares: "The légitime is not due in whole—en masse—to all of the forced heirs, but to each one of them for his share, and the one who has all that should come back to him of the undisposable portion cannot claim or demand a reduction of the gifts—*liberalites*."

In the Succession of Ledbetter, the only heirs of the testator were his two sons, Dr. Wiltz M. Ledbetter and Dr. Marion Ledbetter. In his will the testator bequeathed half of his estate to Dr. Wiltz M. Ledbetter with the

stipulation that at the latter's death, if he should die without issue, that half of the estate should go to the three children of Dr. Marion Ledbetter. He bequeathed the other half of the estate to Dr. Marion Ledbetter, except that, out of that half of the estate, a legacy of $5,000 was bequeathed to each of the three children of Dr. Marion Ledbetter. Dr. Wiltz M. Ledbetter attacked the will on the ground that the bequest of half of the estate to him on the condition that at his death it should belong to the children of Dr. Marion Ledbetter was a prohibited substitution, and on the alternative ground that, if the will should be construed as giving to him, Dr. Wiltz M. Ledbetter, only the usufruct of half of the estate it would deprive him of his légitime. We found that the will contained a prohibited substitution and was therefore null. It was said in the opinion that the légitime which Dr. Wiltz M. Ledbetter had the right to claim as a forced heir was one-half of the estate. The fact, however, was that Dr. Wiltz M. Ledbetter's share of the légitime, as a forced heir, was one-fourth of the estate. But that was a matter of no importance, for we could not have awarded Dr. Marion Ledbetter one-half of the estate as a legatee and one-fourth as a forced heir without doing violence to the intention of the testator to divide his estate equally between his two sons, with the illegal stipulation that at the death of one of them, Dr. Marion Ledbetter, his half of the estate should go to the children of his brother. To give Dr. Marion Ledbetter a fourth and Dr. Wiltz M. Ledbetter three-fourths of the estate would have been, not an interpretation of the will, but the making of a new will, altogether different from the intention of the testator.

■ It is conceded in this case—for there could be no dispute about it—that Mrs. Jordan would be entitled to claim a reduction of only a fourth of this estate, if the legacy which was given to Mrs. Reilly had been giv-

en to a stranger. It would be an anomalous doctrine, therefore, if Mrs. Jordan could virtually annul the will, by claiming all of the légitime, whereas, if the estate had been bequeathed to a stranger, instead of being bequeathed to the coheir, Mrs. Jordan could claim only a fourth of the estate as her légitime.

The judgment appealed from is amended, in that it is now ordered, adjudged and decreed that the interest of Mrs. Hazel Minter Jordan in the estate of Mrs. Julia B. Miles, deceased, is one-fourth of the estate, and that the interest of Mrs. Pearl Miles Reilly is three-fourths of the estate, and, as thus amended, the judgment is affirmed. The costs of these proceedings are to be paid by the estate of Mrs. Julia B. Miles.

LAND and BRUNOT, JJ., dissent.

THOMPSON, J. (dissenting). The only condition on which a testator can give to one of his children the disposable quantum to the prejudice of his other children, without its being liable to be brought back into the succession, is for him to expressly declare that this excess disposition is intended to be over and above the legitimate portion coming to such preferred heir.

If this intent is not so declared, then the amount given in excess of the légitime of the heir must be returned to the succession for an equal division.

If this is not the meaning of article 1501 of the Civil Code, then I confess that I am incapable of comprehending plain English.

The article 1233 of the Civil Code does not change or modify the requirements of article 1501. It merely permits the use of equivalent terms to express the intent of the testator but demands that such terms must *unequivocally* express the intent of the testator to make the disposition an extra or an advantage portion.

The decision handed down herein kills the very letter of the two articles, in holding that

the intended preference is not required to be expressed in the language of the Code, or in terms of equivalent meaning, but that the mere fact of giving a preferment in the donation itself carries with it the presumption or inference that the testator intended that the donation should be regarded as an advantage over the other heirs.

It is unfair in my judgment to the compilers of the Code to convict them of the grossest kind of stupidity in writing into article 1501 a meaningless and senseless condition or proviso.

For it seems to me clear that, if a disposition to one forced heir to the prejudice of another forced heir carries with it on its face a presumption that the testator intended the gift to be an advantage, then there was no sense in writing into the article the requirement that the intent to give an advantage should be unequivocally expressed.

It appears plain to me, therefore, that the court here has gone beyond its duty of interpretation, and has usurped the function of the Legislature in declaring that the intention of the testator is to be arrived at by way of presumption or inference, when the lawmaker has in plain English declared that such intention must be expressed.

The decision herein not only kills the letter of the articles of the Code, but it breaks the uniform line of decisions of this court applying the two articles as written.

In Champagne v. Champagne, 125 La. 408, 51 So. 440, this court held:

"Equality between heirs of the same degree is the cardinal principle of our law of inheritance, and, in order that it may be secured, 'collation is always presumed, where it has not been expressly forbidden.' Whatever is given by a father to a child is presumed to have been given as in advance of the portion which the child may, one day, expect to receive from the succession, and that portion, in the absence of express declaration of the par-

ent to the contrary, can be no greater than the portion of another heir in the same degree; hence what has been so received must be collated or accounted for, in the partition of the inheritance."

In Succession of Ford, 130 La. 442, 58 So. 141, the testator gave all of his property to the six children of his second marriage and $1 each to the four children of his first marriage. The will did not contain an express declaration that the disposition to the children of his second wife was to be an extra portion of his estate, nor did he use words showing unequivocally that that was his intention.

The judgment of the lower court set aside the will, so that the heirs of both marriages would participate equally and alike. That judgment was affirmed by this court on the plain language of article 1501 of the Code.

The court did not rule in that case, as the court now holds in this case, that the mere fact that the testator gave all of his property to one set of his children and $1 each to the other set, carried with it a presumption that an extra portion was intended, but on the contrary said:

"In the absence of direct expressions bequeathing or donating property, the intention must be unmistakably expressed, conferring an advantage."

In the case of Succession of Fath, 144 La. 467, 80 So. 659, the testatrix disregarded the law which reserved two-thirds of her estate to her forced heirs and gave seven-ninths of her estate to one group of heirs, to the disadvantage of two other groups.

The question there presented for decision is precisely the question here presented, viz.: Was the legacy of all the real estate to Mrs. Christopher Fath and her six children intended by the testatrix as an advantage or extra portion to those children? The court answered by saying that the will did not contain the words, "preference," "advantage,"

"extra portion," or "dispense with collation," and the equivalents of those words were not to be found in the will. The court therefore refused to write into the will by presumption and inference the sacramental words by saying, as the court in effect says here, that the testatrix would not have given all of her property—in that case seven-ninths—if she had not intended it to be an extra portion.

In Succession of Ledbetter, 147 La. 776, 85 So. 908, the deceased left two sons, one of whom had children, the other had none. After making certain special legacies the will gave to one of the sons one-half of the remainder of the estate, and the question arose whether this was to be regarded as an extra portion.

The present Chief Justice, as the organ and speaking for a unanimous court, said:

"The bequest of one-half of the remainder of the estate to Dr. Marion A. Ledbetter cannot be given in addition to his legitimate portion, or to the prejudice of the legitimate portion due the other forced heir, because the testator did not declare that the bequest was intended to be over and above the legitimate portion"—citing as authority article 1501, Civil Code.

The organ of the court in that case, who happens to be the organ of the court in this case, after quoting article 1501 of the Code, says that:

"The inference is that, when no such declaration has been made by the donor or testator, a donation or bequest to one of his children is not intended to be over and above his legitimate portion."

That expression was in harmony with the Code and the jurisprudence.

That case is in direct conflict with the holding in the present case. In the one case, where a will gives more of the disposable portion to one heir than to the other, in the absence of any express declaration that it is intended as an extra portion, the court says that the inference is that the testator did not intend the gift to be over and above the legitimate portion.

And, right about, in the present case the court holds that, where a testatrix gives all of her property to one heir and cuts the other out altogether, without the declaration required by the Code, the will is good as to all of the disposable portion, which happens to be one-half in the instant case; the inference being that the testatrix intended to give such disposable portion as an extra portion.

If the will in the Ledbetter Case, which gave more than the légitime to Dr. Marion Ledbetter without saying that it was to be an extra portion, was a nullity, I am unable to comprehend how the court can now say that the will in the instant case, which gives all of the property to one of the two forced heirs without a declaration that it was to be as an extra portion can be held to be a valid will.

The way I construe the will in the instant case is that the testator had no intention of giving to the one heir the inheritance as an extra portion, but, on the contrary, the will plainly discloses an intention to give all of the property to the one heir, to the absolute exclusion and disinherison of the other heir, and in violation of all statutory law and the jurisprudence of this court.

The will should be annulled, as it was so decreed by the lower court, and the two heirs put on a basis of equality, as the law plainly requires, in the absence of an express declaration of the testatrix that she desired one heir to enjoy a preference over the other heir.

I therefore dissent.