PONDER, Justice.
 

 The plaintiff, Emile Ludeau, seeks to recover from the defendant, Harold V. Stromer, $2,098.81 with legal interest from demand.
 

 The plaintiff alleges that he is a wholesale agent for the Sinclair Refining Company at Ville Platte, Louisiana; that Adam Morein was employed by him as distributing man for the purpose of soliciting and delivering Sinclair products to local retail dealers, with his authority restricted to that given wholesale agents by Sinclair Refining Company; that is, selling, billing, and collecting for the products and depositing the proceeds derived therefrom in the name of the Sinclair Refining Company, which fact was well known to the defendant, a local retail dealer; that from September, 1937 through April, 1940, there developed a shortage of $2,797.93 in the plaintiff’s account with the Sinclair Refining Company, which was paid by plaintiff because of his contractual relationship as the resident bulk dealer of the company; that Adam Morein and Harold V. Stromer, the defendant, entered into a conspiracy and collusion to defraud the petitioner of his goods, wares and merchandise, particularly gasoline, wherein at the end or the first of each calendar month, commencing with the month of September, 1937, and from time to time thereafter, through the month of April, 1940, the defendant loaned to Adam Morein monies necessary to cover up deficiencies in fictitious credit accounts, which loans were made in the form of checks to Adam Morein and were repaid with gasoline out of the storage tanks belonging to the plaintiff without billing it to the defendant at the end of each month; that the defendant made the loans to. cover up previous stock shortages prior to or during the audit; that the defendant knew of the shortage and had been repeatedly told
 
 *414
 
 by Morein of such; that defendant benefited in the cut of 1^ per gallon on the regular price for rent due on the filling station which he rented from Mrs. Lawrence Ludeau; that the defendant received further cuts in the price of gasoline under the market value; that the defendant through eight checks advanced loans to Adam Morein in the amount of $1,465 which were repaid in products of the Sinclair Refining Company; that the defendant received an additional benefit on seven checks of $147.50 in like manner; and that an additional cut of one per cent per gallon on gasoline'received by the defendant aggregated the sum to $2,098.81.
 

 The defendant denies any conspiracy and takes the position that Morein was the only party witli whom he dealt in purchasing oil, gasoline and greases, the products of the Sinclair Refining Company; that for a number of years, Morein was the sole person with whom the defendant dealt in connection with the purchase of the gasoline, oils and greases, the products of the Sinclair Refining Company; that if any shortage developed during the period of time that the defendant transacted business with Morein, such shortages were brought about by More-in, the employee and agent of the plaintiff, the fact of such shortages being unknown to the defendant; that the defendant had no knowledge of any fact to constitute any conspiracy ; and he denies that he owes Ludeau the amount herein sued for.
 

 Upon trial of the case, the lower court rejected the plaintiff’s demands. The plaintiff has appealed.
 

 It appears from an examination of the evidence that Morein was employed by Ludeau for the past ten years to operate the bulk or wholesale gasoline plant, and that the operation of this plant was entrusted solely to Morein. Ludeau and the Sinclair Refining Company, hereinafter referred to as the company, were satisfied during this long period of time with the manner in which Morein carried on the business of the plant. Dissatisfaction arose at the time the shortage involved herein was detected. In fact, the officials of the company and Ludeau, as well as the defendant, had the utmost confidence in Morein’s honesty and integrity. Morein made the sales, deliveries, collections and deposits. He repeatedly violated the regulations of the company until he was caught and required to make good the shortage to Ludeau. This shortage was made good or covered in the form of a special mortgage on Morein’s house and various personal properties. From the evidence in this case, there is no doubt that the shortage was brought about by wrongdoing on the part of Morein.
 

 . The question which confronts us is whether or not the defendant participated in this fraud or knowingly derived any benefits therefrom. In o.ther words, did the defendant engage in a conspiracy with Morein to defraud the plaintiff?
 

 The evidence produced by the plaintiff to prove the conspiracy consists mainly of the testimony of two auditors of the company and another witness. Their testimony is based on an audit made of the affairs of the bulk or wholesale plant. The witnesses drew inferences and conclusions which appear to point to a conspiracy. They are, however, predicated on the fact that the de
 
 *415
 
 fendant had knowledge of the rules and regulations of the company with respect to the sale of gasoline. The witnesses theorized that by means of timely loans or purchases of future deliveries of gasoline made by the defendant to and from Morein, prior to certain audits, that Morein was enabled to evade detection. Stress is laid on the fact that the defendant did not keep invoices of the gasoline purchased by him. The witnesses were under the impression that the defendant should not have purchased gasoline in advance or made loans to Morein. They testified that it was against the rules of the company to reduce the price of gasoline, and that the rules required that all checks be made direct to the company. There is evidence to the effect that the company permits future delivery of gasoline, subject to the approval of the district office in Fort Worth, Texas. The defendant’s testimony is to the effect that he did not know that the approval of this office was needed, and that he believed Morein was authorized to make sales for future delivery without the necessity of any approval.
 

 The defendant denies any conspiracy on his part. He testified that he had implicit confidence in Morein and depended upon him for the delivery of gasoline; that he paid-cash for all products purchased from Morein; that he derived no benefits therefrom ; that he accepted as correct the price fixed on the gas by Morein and paid him accordingly; and that he thought Morein was filing the invoices of the gas delivered on the file which was hanging on the wall of his premises, this file being the regular place for filing invoices for oil, etc.
 

 Emphasis is laid on the fact that Stromer’s books did not reflect the purchases of the gas. The method of bookkeeping maintained by Stromer, which system he had been using for a number of years, is very meager and incomplete, in fact, a very poor system.
 

 The plaintiff produced a contract between the Sinclair Refining Company and the defendant, as retail agents, which was purported to have been signed by the defendant. This evidence was offered to prove that the defendant knew of the regulations of the company. The contract also showed that Morein had signed it as a witness. The defendant denied his signature on the contract and accused Morein of having forged his name thereon. The defendant was not contradicted in this respect. Morein was summoned as a witness by the plaintiff but was. not placed on the stand. Defendant endeavored to have the Court call Morein to the stand as its witness in order that he might have the advantage of cross-examining him. Defendant claimed that Morein was a hostile witness.
 

 Since the plaintiff elected to sue only one of the alleged coconspirators and summoned the other conspirator as a witness, the defendant necessarily had the right to assume that Morein was hostile to him. The plaintiff having failed to place the witness, on the stand to contradict the defendant, especially under the circumstances in this case, we must assume that his testimony would have been unfavorable to him.
 

 While the testimony produced by the plaintiff, in some respects, suggests that
 
 *416
 
 there might have been á conspiracy, it is not of sufficient force, in our opinion, to establish such. Moreover', whatever weight it could have is offset by the testimony produced on behalf of the defendant.
 

 We have reached the same conclusion with respect to the facts as that arrived at by the trial court. Moreover, we would not be disposed to disturb the findings of fact of the trial court unless manifestly erroneous.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 ODOM, J., absent.