HAWTHORNE, Justice.
 

 Mrs. Mary H. Pugh Roach, widow of Benjamin H. Roach, died on July 29, 1943, leaving an estate valued in the inventory at $9250. She was survived by eight children born of her marriage with Benjamin H. Roach. Mrs. Roach left a last will and testament in nuncupative form by public act dated November 20, 1914, in which she bequeathed all of her property to certain of her children who were named as legatees therein.
 

 Two of her children who received no bequest under her will, John B. Roach and Mrs. Annie Caroline Roach Nicholson, hereinafter referred to as plaintiffs (together with Mrs. lone V. Roach as assignee of John B. Roach), instituted this suit on July 6, 1944, seeking to have the last will and testament of Mrs. Roach decreed to be null and void because she did not expressly declare in the will that the property bequeathed to the legatees named therein was being bequeathed as an advantage or extra portion, and urging that the bequest of all of the property to the legatees must fall under the obligation to collate and become a part of the estate. They pray that each of them be recognized as the -owner of an undivided one-eighth interest in all the property left by the deceased.
 

 In the alternative, these plaintiffs pray that, in the event the will should be held to be valid, the bequests therein made to the other children be reduced to one-
 
 *751
 
 third of the property of the testatrix, and that they be recognized as owners of an undivided one-eighth interest each in the remaining two-thirds, or one-twelfth to each. Stated somewhat differently, the alternative demand is simply for a reduction of the legacies insofar as they encroach on the legitime of each of these plaintiffs.
 

 The testatrix stated in the will that she considered that the plaintiffs had already had all that was due them, and no bequest was made in the will to these plaintiffs of any property left by the deceased. Plaintiffs contend that, because of this fact, the will as written had the effect of disinheriting them.
 

 The other children of the testatrix or their heirs are defendants in this suit. In their answer they admit that plaintiffs are the forced heirs of the testatrix, but deny generally all other allegations of the petition. By way of special defense they set out that each plaintiff had received more than his or her share of their mother’s estate during the lifetime of their father and mother by donations of community property.
 

 As to plaintiff John B. Roach, defendants allege that he was donated a tract of land comprising five acres by virtue of a simulated sale from his father dated December 16, 1901, and that the property so donated had a value in excess of $3500 at the time of the death of the donor. They allege also that he was donated and given without consideration by his mother in December, 1914, 39 head of dairy cattle of the value of $1750. The total value of these alleged donations to John B. Roach is therefore $5250.
 

 As to plaintiff Mrs. Annie Roach Nicholson, defendants allege that by act of donation dated December 4, 1891, she was given by her father 5.22 acres of land belonging to the community existing between her father and mother. They allege that on December 16, 1914, the same property described in the act of donation was purportedly sold by their father to Mrs. Nicholson (the consideration named in the act of sale being $1000); that this purported sale was a simulation pure and simple, and that the consideration named in the deed was not paid; that the property was worth in excess of $15,000 at the time of the death of the donor.
 

 Defendants pray that the demands of plaintiffs be rejected, and, in the alternative, that “John B. Roach and Mrs. Annie C. Nicholson be ordered to collate the sums of $5250.00 and $15,000.00 respectively, before being allowed to share in this estate, and on their failure to do so that they be required to collate by taking less and thereupon their demands be rejected and their suit dismissed * * Defendants pray further in the alternative that, if plaintiffs are entitled to anything' from their mother’s estate, they are entitled to receive only one-eighth of two-thirds of this estate, and that the judgment
 
 *753
 
 in such event provide that the value of the special gifts made to John B. Roach and Mrs. Nicholson, as set out herein-above, be deducted from said one-eighth of two-thirds.
 

 Although the answer avers that the property alleged to have been donated to Mrs. Nicholson was valued at $15,000 at the time of the death of the donor, her father, counsel for all parties have stipulated that this tract of land was worth at the death of the testatrix as much as $5000.
 

 Prior to trial on the merits, plaintiffs filed a plea of prescription of five years against all of defendants’ demands for collation, and plaintiff John B. Roach filed a plea of prescription of three years against their demand for collation as to the 39 head of cattle. These pleas were referred to the merits by the trial judge.
 

 After trial on the merits, the district judge overruled both pleas of prescription and was of the opinion, as shown by his reasons for judgment, that the will was not null and void, but that the bequests made therein were reducible to the disposable portion, there being no obligation to collate donations or bequests mortis causa; that defendant had not sustained the burden of proving that the sale of the five-acre tract by their father to plaintiff John B. Roach was a simulation, and that the defendants had likewise failed to prove to the satisfaction of the judge that the 39 head of cattle were donated to John B. Roach by his mother; that the tract of 5.22 acres was donated to Mrs. Annie Roach Nicholson, and that the defendants had sustained the burden of proving that it was a donation and that the deed was a simulation, and that Mrs. Nicholson had received more than her legitime.
 

 Accordingly judgment was rendered in favor of plaintiff John B. Roach, recognizing him as one of the heirs of his deceased mother and entitled to the ownership and possession of an undivided one-eighth of two-thirds, or one-twelfth, of all the property belonging to her succession, and judgment was rendered against plaintiff Mrs. Nicholson, rejecting her demand and dismissing her suit.
 

 From this judgment Mrs. Nicholson appealed, and from the judgment insofar as it was in favor of John B. Roach the defendants appealed. Plaintiff John B. Roach and his assignee, Mrs. lone V. Roach, have answered the appeal of defendants, calling our attention to the fact that in the proceedings in the lower court a deed was filed in which plaintiff John B. Roach conveyed to Mrs. lone V. Roach all of his right, title, and interest in the successions of Benjamin H. Roach and Mrs. Mary H. Pugh Roach, and that John B. Roach was made a party plaintiff in these proceedings as warrantor under the deed and as one of the heirs of his mother, and that Mrs. lone V. Roach was made a party plaintiff as assignee named in said deed, and that for these reasons the judgment of the district court should be amended and revised so “as to recognize
 
 *755
 
 the said Mrs. lone V. Roach as vendee and assignee of the said John B. Roach, and that, in any event, the said parties be recognized as entitled to 1/12 of said estate, as their interests might appear.”
 

 We have discovered in our examination of the record that the defendants have not filed an appeal bond to perfect their appeal from the judgment in favor of John B. Roach. The plaintiff John B. Roach has made no issue of this, but, as stated above, answered the appeal.
 

 We find a conflict in the jurisprudence on the question of whether the filing of an appeal bond is necessary to give an appellate court jurisdiction of an appeal, or, in other words, whether an appellate court can take cognizance of the lack of an appeal bond ex proprio motu and dismiss the appeal. Inasmuch as this point was not raised by counsel and the case was not argued before this court, we do not feel that this case is a proper one in which to resolve the conflict, and therefore we have considered the case as though the appeal- of defendants were properly before us.
 

 This case was submitted to this court on briefs, and we do not have the benefit of able counsel’s oral argument. The trial judge, however, has given us the benefit of written reasons for judgment. He has patiently and carefully marshaled the facts from the very conflicting evidence in this case and has set out all pertinent facts in sufficient detail. Moreover, he has cited the law applicable to each conclusion which he reached, and has given his reasons therefor with clarity, logic, and precision.
 

 In refusing to decree the last will and testament of the testatrix null and void, the lower court recognized the general principles of law as they are now established in this state, to the effect that, when a testator disposes of his entire estate to the prejudice of a forced heir, he has done nothing except to make a disposition of property mortis causa affecting the quantum he may legally dispose of to the prejudice of such forced heir, and that such a bequest does not make the will null and void but merely subjects such donation mortis causa to an action by the forced heir for the. reduction thereof and for the recovery of his legitime; and, further, that the obligation to collate does not apply to donations mortis causa. In support of these principles of law the judge cites Article 1502 of the Civil Code, the leading case of Jordan v. Filmore, 167 La. 725, 120 So. 275, and also Succession of Smith, 182 La. 389, 162 So. 21, and Draper v. Van Leer, 197 La. 259, 1 So.2d 513.
 

 Article 1502 provides:
 

 “Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.”
 

 In brief of plaintiff Mrs. Nicholson, it is argued that we should overrule Jordan v.
 
 *757
 
 Filmore, supra, and return to the original construction and interpretation given Article 1501 of the Civil Code, and in support of this argument counsel rely strongly on the case of Succession of Ford, 130 La. 442, 58 So. 141.
 

 Article 1501 of the Civil Code reads as follows:
 

 “The disposable quantum may be given in whole or in part, by an act inter vivos or mortis causa, to one or more of the disposer’s children or successible descendants, to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion.
 

 “This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witnesses.”
 

 In Jordan v. Filmore, supra, the author of the opinion, speaking for the court with reference to the Ford case, said [167 La. 725, 120 So. 280]:
 

 “In the Succession of Ford, the testator left four children of his first marriage and six children of his second marriage. He declared in his will that he bequeathed all of his property to the six children of his second marriage, share and share alike, and, declaring that he had already given one-half of all of his property to the four children of his first marriage in settlement of their claims against his estate, he bequeathed $1 to each of them. They sued to compel the six children of the second marriage to collate the whole estate, on the ground that the testator had not expressed the intention to confer an advantage upon them, or to give them an extra portion; and the court ruled accordingly. Assuming that the court’s interpretation of the language of the will was correct, and that the testator did not intend to give the children of his second marriage an advantage, or an extra portion, over the children of his first marriage, the decree was correct; but, in so far as the author of the opinion dealt with the case as if the residuary legatees were obliged to
 
 collate,
 
 according to the technical meaning of the word, and as if a testator must, in order to avoid the obligation of
 
 collation,
 
 express in an universal or a residuary bequest given to one of his children — any more than the very nature of the bequest itself expresses- — the intention to give the legatee an advantage or an extra portion, the decision is wrong, and ought to be considered overruled by the decision in the Succession of Maltry [161 La. 1032, 109 So. 827].”
 

 In the course of the opinion in the Jordan case, this court interpreted Article 1501 and construed it to have the following meaning [167 La. 725, 120 So. 278]:
 

 “Article 1501 of the Louisiana Code indicates, more plainly than article 919 of
 
 *759
 
 the French Code, that it is only when the disposable portion is given to a prospective heir by donation inter vivos, and not when it is given to an heir by testament, that it must be expressly declared to be given as an advantage or an extra portion, in order to exempt the donee from the obligation of
 
 collation,
 
 strictly so called; for article 1501 provides that such a declaration must be made by the
 
 donor,
 
 to avoid the obligation of the donee to collate. There is no indication in article 1501 — for there would be no sense in the requirement — that a testator who bequeaths more of the disposable portion of his estate to one of his descendant heirs than to another must express, any more plainly than his favoritism itself expresses, his intention that the legacy bequeathed to the favored heir is intended as an advantage over the other heir, or as an extra portion — in order to avoid the obligation of collation, strictly so called. All that the testator has to do in the distribution of his estate among his heirs as he sees fit, to be sure that his will shall be carried out, is to avoid impinging upon the legitime which the law reserves to each of his forced heirs.”
 

 The arguments offered by counsel on this point do not warrant the overruling of Jordan v. Filmore, supra. We are not disposed to overrule a case unless it is conclusively shown that the prior conclusion is erroneous. This plea of nullity of the will is therefore without merit.
 

 Article 3542 of the Civil Code provides that an action for the reduction of excessive donations, among other actions, is barred by the prescription of five years, but this article does not fix a time at which prescription begins to run, as heretofore pointed out by this court. It is plaintiffs’ contention that this article is applicable to defendants’ demand for collation of the property received by them, which defendants allege plaintiffs received by donations or simulated sales. Plaintiffs have apparently abandoned the plea of prescription of three years, for they do not urge it in this court.
 

 All the property acquired by plaintiffs in these various transactions belonged to the community which existed between their parents — the first, the five-acre tract, being acquired by Mrs. Nicholson in 1891, and the last, 39 head of cattle, allegedly acquired by John B. Roach in December, 1914.
 

 The testatrix died on July 29, 1943, and this suit was filed on July 6, 1944, a little less than one year later. Although application had been made to the court to have her will probated, it had not been admitted to probate on the date this suit was filed. Defendants’ demand for collation is to the mother’s succession. In such a case, where donations have been made from community property or from community funds, one-half of the amount to be returned must be collated in the father’s succession and the other one-half in the mother’s succession.
 

 
 *761
 
 Plaintiffs apparently base their plea of prescription on the theory that the prescription in this case started to run from the death of their father on April 3, 1926, and cite in support of this plea the case of Naudon et al. v. Mauvezin, 194 La. 739, 194 So. 766, in which case a plea of precription of five years for a claim for collation was sustained by this court. However, a few months later, without mentioning or citing the Naudon case, this court in disposing of a similar plea in the case of Himel v. Connely, 195 La. 769, 197 So. 424, 428, said: “ * * * the prescription of five years, by which, according to article 3542 of the Civil Code, an action to reduce an excessive donation to the disposable portion is barred, is not applicable to an action to compel collation. * * * ”
 

 Plaintiffs urge that, ’even though the trial court felt constrained to follow the Himel case, this court is not compelled to do so and can return, if it sees fit, to the doctrine plainly announced in the Naudon case. It is not necessary for us in the instant case to discuss these two decisions, however, for the reason that five years have not elapsed from the date of the death of the testatrix herein, and it obvious that the right to demand collation as to the mother’s succession could not in any case exist before her death. To say that prescription started to run from the date of the death of the father would lead to the absurd result that prescription of the right to demand collation in the mother’s .succession began to run before the existence of that right. Obviously five years have not elapsed since the testament was filed for probate, if prescription to defendants’ demand for collation began to run on this later date.
 

 We now come to the questions of fact, raised in answer by defendants’ special defense, whether plaintiffs, Mrs. Nicholson and John B. Roach, had received donations of community property from their father and mother of a value in excess of their respective legitimes.
 

 As pointed out by the trial judge, the testimony of several of the witnesses discloses such bias and animosity toward other witnesses as to destroy partially any effect that could be given to their testimony. However, from the undisputed facts and documentary evidence, we have reached the same conclusions as the trial judge.
 

 Mrs. Nicholson received by donation from her father in December, 1891, 5.22 acres of land. Although this same property was subsequently sold to Mrs. Nicholson in December, 1914, for a purported consideration of $1000, this transaction was a simulation pure and simple, made for the purpose of clearing her title to the land, and no consideration was paid for this deed. The value of the land as of the death of Mrs. Roach, according to a stipulation of all parties, was as much as $5000. If under the law one-half of this amount, $2500, is collated in the mother’s succession, valued in the inven
 
 *763
 
 tory at $9250, the total value of the property left by the testatrix would be $11,750, and it can readily be seen that Mrs. Nicholson has received by virtue of the donation inter vivos of community property more than her legitime, and therefore is entitled to'nothing from her mother’s succession. •
 

 According to the allegations of the special defense set up by defendants, plaintiff John B. Roach received by donations of community property five acres of land and 39 head of dairy cattle. The land was received by him under a deed dated December 16, 1901, from his father for a purported consideration of $100. The testimony of defendants that John B. Roach did not have $100, the amount of the consideration, at the time this land was deeded to him is not sufficient to prove that this was not a bona fide sale of the property. In Blackman v. Brown et al., 155 La. 959, 99 So. 711, 713, this court said: “The law does not favor actions by forced heirs to undo transactions of their ancestors as done in fraud of their rights. Such actions can only succeed where the proof adduced in support thereof is convincing, if not irresistible. * * * ”
 

 As to the 39 head of cattle, valued at $1750, allegedly donated by the mother to John B. Roach, the.evidence is so conflicting that it is impossible for us to say that this herd of cattle was so donated to him or even that such a herd of cattle ever actually existed.
 

 We therefore conclude that the defendants have failed to discharge the burden of proving their special defense as to John B. Roach, and that he is accordingly entitled to his legitime in his mother’s estate — one-eighth of two-thirds, or one twelfth, thereof.
 

 It is well settled in our law that the trial judge’s finding of fact is entitled to great weight and will not be reversed unless manifest error is shown on appeal. Wagner v. Shannon, 180 La. 233, 156 So. 289; Lejeune v. Lejeune, 187 La. 339, 174 So. 643; Ludeau v. Stromer, 199 La. 824, 7 So.2d 70; McGee et al. v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Jones v. Blossman, 209 La. 530, 25 So.2d 85; Thornton v. Ellington, 209 La. 613, 25 So.2d 282; State ex rel. Theriot v. Pulling et al., 209 La. 871, 25 So.2d 620.
 

 For the reasons assigned, the judgment of the district court is amended to recognize Mrs. lone V. Roach as vendee and assignee of John B. Roach, and Mrs. lone Roach is hereby declared to be the owner of an undivided one-eighth of two-thirds, or one-twelfth, of all the property left by Mrs. Mary H. Pugh Roach, real, personal, and mixed, and sent into possession thereof, insofar as the interest of John B. Roach in the Succession of Mrs. Mary H. Pugh Roach was conveyed to Mrs. lone V. Roach by the instrument dated December 10, 1943, and recorded in Conveyance Book 480, page 453, of the records of Caddo
 
 *765
 
 Parish; and as thus amended the judgment is affirmed. It is further ordered that the costs be divided equally' between, and paid by, plaintiff Mrs. Annie Roach Nicholson and said defendants.