150 So. 21

**WINBARG v. WINBARG et al.**

No. 31695.

July 7, 1933.

Rehearing Denied Oct. 3, 1933.

Rusca & Cunningham, of Natchitoches, for appellant.

Breazeale & Hughes, of Natchitoches, for appellees.

ROGERS, Justice.

Two proceedings growing out of the probate of the will of the late Mrs. Caroline Winbarg were consolidated for trial in the district court, and from the judgment rendered therein all the parties litigant appealed.

After the defendants had filed their suspensive appeal bond, plaintiff, pursuant to the provisions of Act No. 112 of 1916, proceeded in the district court to attack the bond in form and substance and also to test the pecuniary responsibility of the surety. The judge of the district court, after hearing, decided that the bond was legal and the surety sufficient. Plaintiff has appealed from the judgment.

It would serve no useful purpose for us to determine whether the judge of the district court properly maintained the legality and sufficiency of defendants' appeal bond. If, on consideration of the question involved, we should find ourselves unable to agree with his ruling, in whole or in part, we would not feel justified in dismissing the appeal, but could only remand the case to permit appellants to correct their appeal bond. We think the cause of justice would be better promoted by disposing of the case now rather than to await the event of further proceedings with respect to the appeal bond.

On the merits the question arises on the annulment, or reduction, of the legacies contained in the will of the late Mrs. Caroline Winbarg.

Eugene B. Winbarg, plaintiff, and defendants, Albert A. Winbarg and Howard J. Winbarg, are three of the four surviving sons of Simon Winbarg and Mrs. Caroline Winbarg, his wife. Simon Winbarg died intestate on June 2, 1910, and Mrs. Caroline Winbarg died testate on December 24, 1930.

The olographic will of Mrs. Caroline Winbarg was probated on January 6, 1931. Albert A. Winbarg was appointed and qualified as executor, and on January 28, 1931, his final account was filed. The account was opposed by Eugene B. Winbarg, who also filed suit against Albert A. Winbarg and Howard J. Winbarg to annul, or to reduce, certain legacies made to the defendants by their deceased mother. The grounds of nullity alleged in the opposition filed in the succession proceeding and those alleged in the separate suit are substantially the same.

The dispositions contained in the will of Mrs. Caroline Winbarg are in the following words and figures, viz.:

"First I desire all my just debt paid, second I have advanced to each of my sons Eugene B. Winbarg, Louis L. Winbarg and Albert A. Winbarg during their lives considerable money and property but have not advanced to my son Albert Winbarg an amount equal to the sum I have advanced to Eugene and Louis nor have I advanced my son Howard Winbarg anything now in order to place Albert and Howard on an exact equality with my sons Eugene and Louis I now give and bequeath to my son Albert Winbarg the undivided one half of the lot and improvements situated on the east side of Jefferson Street in the City of Natchitoches being the residence in which I now reside the value of this bequest I estimate to be sufficient to place Albert on an equality to the respective amounts I have heretofore advanced to my sons Eugene and Louis which advances I now confirm and dispense them accounting for third I will and bequeath to my son Howard Winbarg an undivided one half of the lot and improvements thereon situated on the east side of Jefferson Street in the City of Natchitoches my residence.

"I also give and bequeath to Howard Winbarg four shares of the capitol stock of the Peoples Bank of Natchitoches also two shares of stock in the building loan association of Natchitoches.

"Also all the household goods and effects now in my residence including all silverware and silver candlesticks it being my intention to give to Howard every species of movable property owned by me in my residence in the City of Natchitoches.

"The value of those special bequests to my son Howard is equal to what I have already

advanced to my other children, it being my desire that any (my) four children share equally in my estate.

"Fifth the two shares of capitol stock in the Merchants and Farmers Bank of Natchitoches in my name I declare to belong to my son Howard and I instruct my executor to deliver them to him.

"Sixth I give and bequeath to this children of my son Louis Winbarg in equal portions my lot and house situated in the City of Natchitoches near the ice factory acquired from Alex Greene.

"Seventh in consideration and payment for the services and the care and love they have shown to me by my two sons Albert A. Winbarg and Howard Winbarg and as compensation to them for such services I give and bequeath to each Albert Winbarg one thousand dollars and to Howard Winbarg one thousand dollars.

"Eighth there shall be no collation between my children.

"Ninth, all other property I may die possessed of I bequeath to my four sons named share and share alike.

"Tenth if any bequest or advances heretofore made to either of my four sons is in excess of legal share of either of my heirs in my estate I hereby declare such excess is a special bequest to such heir as an extra portion in excess of his legitimate share in my estate."

Plaintiff alleges that while the bequests in his mother's will were made under the pretext of equalizing values and as remunerative donations, the purpose and intent of the testatrix was to destroy plaintiff's légitime

and vest all her property, as well as property in which she owned only an interest, in defendants, her two unmarried sons, who lived with her. That the reasons assigned for the bequests were erroneous and untrue, and that the act of the testatrix practically amounted to a deprivation of plaintiff's rights as a forced heir. That the bequests attempted to dispose of property not owned by the testatrix but by plaintiff and his coheirs, which property had been inherited from plaintiff's father, brother, and sister, who died before his mother. That the legacies, if valid, were not subject to reduction, because of the recital in the last disposing clause in the will, wherein the testatrix, after the illegal dispositions had been made, expressly declared that she desired her four children to share equally in her estate; but if so, then, in the alternative, the legacies should be reduced to the disposal portion. That the property inherited by plaintiff from his deceased father, brother, and sister had been left with his mother, who disposed of the same. That she turned over to the defendant Albert A. Winbarg the mercantile business of his father, and that said defendant should account for all property received by him. Plaintiff complains that certain property had not been inventoried, and that as to all property inventoried the appraisement was much below its actual value, and that a new inventory should be ordered and all property re-appraised so as to reflect the true values.

The executor's final account shows the appraised value of the estate's assets to be $12,930.06; that the debts and legacies amount to $11,881.67; and that the balance to be divided among the four heirs is $1,048.-39, in which the share of each heir is $262.10.

Defendants' answer to plaintiff's suit is practically a denial of all his allegations attacking the dispositions of the will, coupled with the express defense that since the will prohibited collation, plaintiff is without right to claim or fix his légitime.

The judgment of the court below recognized plaintiff's undivided interest, acquired by inheritance, in the property bequeathed to the defendants; annulled the testamentary dispositions in their favor; and partially sustained plaintiff's attack on the executor's final account.

We condense the facts disclosed by the record narratively as follows, viz.:

Simon Winbarg, the father of the parties litigant, was married twice. By his first marriage he had only one child, a daughter named Pearl. The daughter married Jake Levin, and, after his death, she married one Dominguez. The second wife of Simon Winbarg was Caroline Rosenthal, the testatrix. The issue of this marriage were the following children, viz.: Rosina, who married Dave Mayer, and died in 1916; Eugene B., the plaintiff; Louis A., who is married and lives in New York; Albert A. and Howard J., the defendants; and Harold, who died in 1890.

The first matrimonial community when dissolved by the death of the first wife owned the home property involved in this suit and other property.

■ On June 15, 1889, Pearl Winbarg, authorized by her husband, executed a notarial act of donation in favor of her half-brother

Harold, a child of five or six years of age, of her one-half interest in the community real estate inherited by her from her mother. Some time prior to this donation, Simon Winbarg made a dation en paiment to his second wife, Mrs. Caroline Winbarg, of his one-half interest in the property of his first matrimonial community. This transfer was made in settlement of a judgment previously obtained. As the result of these two transfers, the title to the property became vested in equal interests in Harold Winbarg and Mrs. Caroline Winbarg. On Harold's death, his interest was inherited by her parents, sisters, and brothers. When Simon Winbarg died, as there was a separation of property between his wife and himself, all his property, including his interest in the property inherited from his predeceased son, Harold, devolved upon his surviving children. On the death of Rosina Winbarg Mayer, her interest in the property was inherited by her mother, her four brothers of the full blood, and her sister of the half blood.

The court below properly held that plaintiff could not be divested by his mother's will of his undivided interest in the real estate known as the home property.

■ Defendants suggest in argument that the interest of Pearl Winbarg Dominguez in the property inherited by her from her mother was not legally disposed of by her under the purported donation to her minor half-brother Harold Winbarg. That the donation was not valid in form and was also null because it embraced all the property owned by the donor at the time of its execution. That this was the opinion of the executor, and as the will of Mrs. Caroline Winbarg, bequeathed the whole property to the defendants, it was necessary to acquire at the expense of the succession the interest of Mrs. Dominguez.

But defendants at no time appear to have questioned the legality of the donation. Neither was it questioned by Mrs. Dominguez, the donor, during the forty-four years elapsing between its execution and the death of her mother. Shortly after the death of Mrs. Caroline Winbarg, Mrs. Dominguez demanded of the executor her interest in her mother's estate, and defendants subsequently bought her out. The purchase price was $750, and the sale was made direct to the defendants, Albert Winbarg and Howard Winbarg. Defendants did not purport to buy the donor's one-half interest in the property, but they actually bought all Mrs. Dominguez's "right, title and interest acquired by inheritance, donation and purchase in and to the Succession of her father, Simon Winbarg, her mother, Mrs. Simon Winbarg, her step-mother, Mrs. Caroline Winbarg, her half-sister, Mrs. Rosina Mayer, and her half-brother, Harold Winbarg."

The purchase of Mrs. Dominguez's rights in the property, whatever they might be, was clearly an individual transaction on the part of the defendants, and the purchase price cannot be charged to the estate of Mrs. Caroline Winbarg.

Rosina, Albert, and Howard Winbarg were the named beneficiaries in an insurance policy on the life of their mother. This policy was for $4,000. Rosina's beneficial interest therein was $2,000, and that of her brothers was $1,000 each. On Rosina's death, no change was made as to the beneficiaries, so

that when Mrs. Caroline Winbarg died the proceeds of the policy to the extent of $2,000 fell into her succession. The court below so held, and awarded plaintiff a judgment for his interest in the $2,000. We find no error in the judgment.

Under the final account of the executor purporting to carry out the terms of the will of Mrs. Caroline Winbarg, the defendants Howard and Albert Winbarg will receive respectively property of the value of $5,057.09 and $4,876.75, while the defendant will receive property of the value only of $262.10.

Plaintiff attacks the legacies on the ground that as to her interest in the property bequeathed to defendants the testatrix had deprived plaintiff of his légitime, and under the pretext of equalizing values had attempted to vest all her property in defendants, which, in effect, amounted to plaintiff's disinherison. Plaintiff alleges that the recital in the will that the testatrix had contributed considerable money and property to plaintiff are erroneous and untrue.

■ While the dispositions of the will do not constitute technically the disinherison referred to in articles 1617, 1621, and 1622 of the Civil Code, nevertheless their effect is to disinherit plaintiff by leaving practically the entire estate of the testatrix to the defendants; which cannot be done, at least to the extent of plaintiff's légitime. On the other hand, a parent may declare in his will that a child has received his full share of the estate during the life of the parent, and, therefore, shall take no further part therein. But in such a case, the truth of the declaration must be proved by those relying thereon. Walet v. Darby, 167 La. 1095, 120 So. 869.

Cf. Succession of Reems, 134 La. 1033, 64 So. 898; Pennywell v. George, 164 La. 630, 114 So. 493.

The uncontradicted evidence in the record is that the testatrix never gave plaintiff any money or property. During the lifetime of his father, his parents paid a note for $400 resting against a lot of ground that plaintiff purchased and they gave him the note as a wedding present.

The so-called remunerative donation or legacy of $1,000 to each of the defendants does not set forth what services of the donee or legatee the testatrix was desirous of compensating thereby. And the donees or legatees, themselves, do not pretend to have rendered the testatrix any services entitling them to compensation.

■ Where a remunerative donation exceeds the disposable portion, the donee or legatee is bound to prove the value of his services. If proved to be equal to or greater than the bequest no reduction can be made; otherwise, it must be reduced to the estimated value of the services. Succession of Fox, 2 Rob. 292; Succession of Henry, 158 La. 516, 104 So. 310.

Where a remunerative donation does not exceed the disposable portion, the heirs of the donor cannot question his estimate of the value of the services; and in such a case, the donation must be viewed as an ordinary donation, which the announcement of the donor's motive cannot affect. The value of the services is only material if it be found that the donor has exceeded the disposable portion. The donation then might be reduced. Miller v. Andrus, 2 La. Ann. 767.

Since defendants have not proved that they rendered any services whatever to the testatrix, the so-called remunerative donations or legacies cannot be regarded as dations en paiement and as such carved out of the legitime of the forced heirs, but must be regarded merely as ordinary donations or legacies subject to reduction.

■ In the tenth and last disposing clause of her will, the testatrix expressly provides that if any bequest or advance made to either of her four sons is in excess of his legal share, such excess is declared to be a special bequest to such heir as an extra portion in excess of his legitimate share of the testatrix' estate.

The provisions of the will, viewed as a whole, plainly evidence the intention of the testatrix, under the pretext of equalizing values and compensating services, of leaving practically her entire estate to the defendants, with the saving provision that if the bequests exceed the disposable portion they shall be regarded as an advantage or extra portion.

The bequests to defendants are not null in their entirety, but, under the tenth clause of their mother's will, they are reducible to the disposable portion. And as the testatrix left four forced heirs, including the parties litigant, the disposable portion cannot exceed one-third of her succession. Civ. Code, art. 1493; Cavanaugh v. Youngblood, 162 La. 22, 110 So. 75.

■ Defendants' contention that because the will prohibits collation plaintiff cannot claim his légitime is unfounded. The right to demand collation under the pertinent articles of the Civil Code arises only from a donation made or an advantage given to a prospective heir by his ancestor during the latter's lifetime, and not from a legacy given by a last will. Jordan v. Filmore, 167 La. 725, 120 So. 275.

It appears from the record that the stock in the building and loan association referred to in the will was disposed of by the testatrix subsequent to the making of her will.

We do not find any merit in plaintiff's claim of an interest in a certain diamond ring in the possession of defendant Albert Winbarg. The court below found, and we think correctly, that this ring was a manual gift to Albert from his mother.

The court below also rejected plaintiff's opposition to the items of $2,114.65 for nursing, doctor's bills, and expenses of last illness of Mrs. Winbarg and of $300 to Dr. Phelps and $200 to Dr. Bath. We do not find any error in the judgment in this respect.

In his reasons for judgment, the judge of the district court says that the evidence shows the testatrix received $6,000 in cash from the estate of her predeceased daughter, Rosina Mayer, which she invested in United States bonds and bank stock certificates; and that plaintiff must be recognized as the owner of an undivided one-fifth of an undivided three-fourths interest in the $6,000 or the proceeds of its investment in the government bonds and bank stock certificates. However, the judgment itself does not contain any decree consonant with the judge's reasons. The judgment orders "that plaintiff's interest as forced heir in the Bank Stocks and Bonds be

recognized and his opposition to the delivery thereof to defendants be sustained."

■ In our opinion, there is no satisfactory showing in the record as to what amount the testatrix received from the succession of Rosina Mayer or as to how much of what was received she invested in United States bonds and bank stocks.

The only testimony on the point appears in the cross-examination of the defendant A. A. Winbarg (Tr. 134), where, in answer to a question, he stated that his mother bought the bank stock from funds that she worked for, "from the sweat of her brow, keeping boarders."

In answer to the direct question, "How did she (the testatrix) invest the money she received from the succession of Rosena?" the witness said:

"Personally I can't answer that; that was during the time I was in the army, and I think some of it was invested in Liberty bonds that was $6,500."

"Q. The balance you don't remember? A. No, but I think she bought some Liberty bonds from Lou."

This testimony is extremely vague and clearly hearsay and not such as would justify the court in holding that the testatrix had received $6,000 from the succession of her predeceased daughter, Rosina, which amount she invested in United States bonds and bank stock certificates.

The judgment is correct so far as it appears to recognize the bank stocks and bonds as the property of the succession of Mrs. Caroline Winbarg, the testatrix, and to recog-

nize the interest of plaintiff as a forced heir therein. But as to the six shares of bank stock bequeathed to Howard Winbarg, plaintiff's interest therein as a forced heir must be limited to his légitime.

The executor appears to have collected two items of interest on bonds amounting to $143.77 for which he has not accounted. We see no reason why he should not be required to do so.

For the reasons assigned, the judgment herein appealed from is reversed so far as it annuls in their entirety the special legacies to defendants contained in the will of their deceased mother, Mrs. Caroline Winbarg; and the judgment is amended so as to reduce to his légitime the interest of plaintiff in the six shares of bank stock bequeathed to the defendant Howard Winbarg.

It is further ordered that the legacies to defendants be reduced to their disposable portion only—one-third of the rights and interests of the testatrix in the property and effects referred to in her will as fixed in the judgment of the court below as herein amended.

It is further ordered that the plaintiff, Eugene B. Winbarg, as a forced heir of the decedent, Mrs. Caroline Winbarg, is entitled to his légitime—one-fourth of two-thirds of the rights and interests of his mother, Mrs. Caroline Winbarg, in the property and effects referred to in her will as fixed in the judgment of the court below as herein amended.

It is further ordered that the executor account to the succession of Mrs. Caroline Winbarg for $143.77, representing the interest

on bonds belonging to the decedent collected by him.

In all other respects, the judgment appealed from is affirmed; one-half of the costs of appeal to be paid by plaintiff, and one-half of the costs of appeal to be paid by the defendants.