162 So. 21

Succession of **SMITH.**

No. 32878.

April 29, 1935.

Rehearing Denied May 27, 1935.

Benjamin W. Miller, of Bogalusa, and Blasi & Sehrt, Joseph F. Blasi, Jr., and Clem H. Sehrt, all of New Orleans, for appellants Belknap S. Smith and others.

Carroll, McCall, Plough & Carroll, of New Orleans, for appellees Mrs. Carrie Smith Payne and heirs of Julian D. Payne.

A. Giffen Levy, of New Orleans, for appellee Mrs. Alice Smith Martin.

HIGGINS, Justice.

Plaintiffs brought this action against defendants, as legatees, to have the olographic will of their deceased paternal grandfather declared null and void, in so far as it attempted to disinherit their father, and for the annulment of a purported act of renunciation by their father of his father's succession, and to be recognized as the forced heirs of their deceased father, entitled as such to one-third of their paternal grandfather's estate, and for an accounting to them by the legatees, under the olographic will, of their father's legitime.

The defendants filed a plea of prescription of five years, under article 3542 of the Revised Civil Code, on the ground that this was a suit for the reduction of excessive donations.

The district judge sustained the exception, dismissing the suit. Plaintiffs have appealed.

Plaintiffs, on January 21, 1932, filed suit alleging that they are the children of Marshall J. Smith, Jr., who died intestate in the city of New Orleans on October 20, 1923; that their father was one of three legitimate offspring of Marshall J. Smith, Sr., who died in this city on June 19, 1904; that their grandfather left a testament in olographic form dated July 3, 1897, bequeathing one-third of his estate to his daughter, Carrie Smith, wife of Julian D. Payne, one-third to his daughter Alice Smith, and one-third to his son-in-law, Julian D. Payne, and Marshall J. Smith, III, jointly; that the will contained the following provisions:

"As my son Marshall (Jr.) is greatly indebted to me, and has obtained already far more than his legitime in my estate, as will be more fully shown by my books, and by his habits is incapable of managing money affairs or otherwise attending to business I do not desire that he should receive any portion of my estate. * * *"

That the will was probated on June 23, 1904, in the civil district court for the parish of Orleans, and the legatees, with the exception of Marshall, III, were placed in

possession of the estate by judgment dated December 22, 1904; that the colegatees of Marshall, III, attempted to fraudulently deprive him of his inheritance, but later settled with him, taking a release in full for any claims that he might have, against his grandfather's estate; that on April 21, 1894, Marshall Smith, Sr., had his son, Marshall, Jr., interdicted for habitual inebriacy and incompetency, through judgment of the civil district court; that on September 6, 1904, the defendants joined Marshall, Jr., in having the interdiction lifted and set aside; that on September 9, 1904, defendants, well knowing that Marshall, Jr., was mentally and physically incapable of performing any juristic act, had him to make a notarial acknowledgment of the advances made to him by his father and a renunciation of all of his rights as a forced heir in his father's estate, in consideration of their granting him a small "pension"; that Marshall, Jr., remained to the end of his life an habitual inebriate incapable of performing any legal act; that the acts of the defendants from the beginning "have been tinctured by fraud and bad faith," in withholding the legacy due Marshall Smith, III, until threatened with legal proceedings and in not properly conveying to other special legatees legacies that had been bequeathed to them; that they accept the successions of their father and paternal grandfather purely, simply, and unconditionally and desire to be placed in possession of an undivided one-third of their grandfather's estate, and particularly the property and effects set

forth in the inventory filed in his succession; and that they are entitled to an accounting from the defendants for their legitime from the date they were placed in possession of their grandfather's estate.

The plaintiffs contend the five-year prescriptive plea does not apply, because this is an action to declare null and void that portion of the testament which attempts to disinherit a forced heir and deprive him entirely of any participation whatever in the legitime reserved to him by law, and that such a provision in the will is in derogation of the force of laws made for the preservation of public order and good morals and prohibited as such and therefore imprescriptible.

Defendants contend that this is an action to reduce excessive testamentary donations, in order to restore the legitime of a forced heir who was denied any share in his father's estate, because he had already received advances in excess of the amount that he was entitled to as a forced heir and, therefore, under the express provisions of article 3542, and from the face of the plaintiffs' petition, it appears that the action has prescribed and that, while it is true that prescription does not run against absolute nullities resulting from acts in contravention of the established public policy, or in violation of good morals and laws of this state, prescription does run against relative nullities.

The respective records of the proceedings mentioned in the plaintiffs' pe-

tition are annexed and made a part of their pleadings and under the law of this state it is well settled that, for the purpose of the trial of an exception of prescription which is based upon the face of the pleadings, all of the allegations of the petition are accepted as true. Warn v. Mexican Petroleum Corporation, 6 La. App. 55; Foster & Glassell Co., Ltd., v. Knight Bros., 152 La. 596, 93 So. 913.

Plaintiffs rely upon articles 1619 and 1624 of the Revised Civil Code, which read as follows:

Article 1619: "The disinherison must be made by name and expressly, and for a just cause, otherwise it is null."

Article 1624: "The testator must express in the will for what reasons he disinherited his forced heirs or any of them, *and the other heirs of the testator are moreover obliged to prove the facts on which the disinherison is founded; otherwise it is null."* (Italics ours.)

The petition and records made part thereof show that the defendants, as testamentary heirs, did not prove the facts on which the attempted disinherison was founded other than by the notarial acknowledgment by Marshall, Jr., of the advances made to him by his father and his renunciation of his father's estate. But this acknowledgment and renunciation is attacked on the ground of fraud said to have been perpetrated by defendants and the incompetency of Marshall, Jr. Therefore, in considering the plea of prescrip-

tion, we must assume that the disinherison and renunciation are null. Walet v. Darby, 167 La. 1095, 120 So. 869, 871; Winbarg v. Winbarg et al., 177 La. 1071, 150 So. 21; Pennywell v. George, 164 La. 630, 114 So. 493; Succession of Reems, 134 La. 1033, 64 So. 898; Potts v. Potts, 142 La. 906, 77 So. 786; articles 1495, 1617, 1618, 1620, and 1621, Rev. Civ. Code.

Now, is this nullity absolute and imprescriptible or relative and prescriptible?

In the case of Walet v. Darby, supra, the testator placed a provision in his will that his two grandsons were not to share in his estate, because they were well provided with funds from their father's estate, and because the testator had rendered valuable services to their father, which exceeded the bequests he made to other legatees. The court said:

"We return now to the submission above set forth in paragraph I, to wit, 'The court is to determine whether the will should properly be construed as disinheriting the plaintiffs; and if not, what is its legal effect in so far as affects their interest.'

"We agree with the district judge that the clause in the will, last quoted above, is not technically the 'disinherison' spoken of in the Civil Code, arts. 1617, 1621, 1622. The complete disinherison there spoken of is a disinherison for offenses against the person and authority of a parent; and the meaning of the Code is that a parent cannot wholly disinherit a child except for certain offenses, there specified,

nor through mere caprice or ill feeling, or because he thinks the child has sufficient of his own and does not need the inheritance. But to deprive a child, by will, of all part in the testator's succession, is in effect to disinherit him, no matter what the form used for that purpose; whether by declaring in words that the child shall take no part in the succession, or by leaving the whole of the succession to others. Suffice it to say that this cannot be done, at least to the extent of the 'legitime' reserved by law to forced heirs. R. C. C. art. 1493 et seq.

"But we know of nothing in the law which forbids a parent from declaring that, because a child has already received his full share of the estate during the life of the parent, he shall take no further part therein. On the contrary, the law itself provides, in effect, that such shall be the case. R. C. C. arts. 1227 to 1230, 'Of Collations.'

"On the other hand, after mature consideration, our conclusion is that the mere declaration, in a parent's will, that a child has already received his full share in a parent's estate, will not suffice; that the truth of the declaration must be proved by those relying thereon. Otherwise the provisions of our Code, relative to the legitime reserved to children, could readily be set aside by any testator disposed to do so.

"It may be true that ordinarily a person will not be presumed to have attempted an illegal act, but R. C. C. art. 1624, de-

clares the testator must not only express his reason for disinheriting a child, but 'the other heirs * * * are moreover obliged to prove the facts.' We think the two cases are analogous.

"V. But the fact that a parent has by will sought to deprive a child of his share in the estate is no ground for annulling the will as a whole.

"In Jordan v. Filmore et al., No. 27990 of our docket, 167 La. 725, 120 So. 275, we held that the only right of a forced heir, who had by the will been deprived of all share in the estate, was to claim from the other heirs his legitime. We said: 'All that the testator has to do in the distribution of his estate among his heirs as he sees fit, to be sure that his will shall be carried out, is to avoid impinging upon the legitime which the law reserves to each of his forced heirs.'

"Accordingly, all that these plaintiffs are here entitled to is that they be recognized as entitled to their legitime in their grandfather's estate."

In the case of Winbarg v. Winbarg, supra, the court held that the effect of the testamentary disposition was to disinherit the forced heir by leaving practically the entire estate to the defendant, but that the dispositions to the defendant were not null but merely reducible to the disposable portion.

In the case of Potts v. Potts, supra, a similar situation was presented and the court ordered the reduction of the dona-

tions which were in derogation of the legitime.

In the case of Cox v. Von Ahlefeldt, 105 La. 543, at pages 577, 578, 30 So. 175, 212, the court, on rehearing, in sustaining the plea of five years prescription, said:

"But we are of opinion that, while the plaintiffs have proceeded upon the theory that they are not called upon to bring any action for reduction, the present action, including, as it does, a demand, made, contradictorily with all the parties in interest, for the recovery of the legitime of a forced heir in property from which, if subjected to the will of the de cujus, the forced heir would be excluded, is in effect an action for the reduction of an excessive donation. 'It is clear,' said Mathews, J., 'that where forced heirs are deprived by will of their, legitimate portion, or less than that amount is given to them, they have an action for the complement of their legitimate part, the effect of which is to cause a reduction of any other disposition made by the testator to the prejudice of said legitimate part. * * * This is an action, accorded to forced heirs, to recover that part of the testator's estate which he may have disposed of beyond the disposable part, against those who have thus illegally acquired it.' * * * Gardner v. Harbour, 5 Mart. (O. S.) [408] 410. To the action for reduction, in the event that the court should hold that the instant suit should be so regarded, the defendants plead the prescription of five years. * * *"

The court held the five-year prescription applicable.

In the Succession of Meisner, 121 La. 863, 46 So. 889, 890, the will in effect disinherited the only forced heir by providing that unless he claimed the estate within five years after the testator's death, the estate should go to other named legatees. In sustaining the plea of prescription of five years, the court said:

"The testatrix died October 22, 1902.

"The will was probated October 23, 1902.

"The executor filed his final account April 27, 1908. This account shows a balance of $2,947.79 for distribution among the heirs of the testatrix, but does not show who these heirs are, nor purport to make any distribution among them.

"The persons who are to take under the will, in default of the absentee, have filed an opposition, asking that the said balance be paid to them, as provided in the will. They show that Wm. Bodenbinder disappeared from his home just before the Civil War, in 1861, as stated in the will, and that he has never been heard from since, although his mother inquired and advertised for him, and sought for information of him, for several years after the war.

"The executor answers that the part of the estate which constitutes the legitime of the absentee belongs to the absentee, and cannot be ordered to be paid to the opponents until the absentee can be shown to have died, or until such a length of time can be shown to have elapsed since

his birth as to give rise to a presumption of his death.

"The absentee not having 'returned and claimed the estate in five years after the death of the testatrix,' the condition upon which the estate is to go to the opponents under the terms of the will is fulfilled; and, more than five years having elapsed since the probate of the will, his action to reduce the donation, even if he appeared, would be barred. Cox v. [Von] Ahlefeldt, 105 La. [543] 579, 30 So. 175; Rev. Civ. Code, art. 3542."

In Succession of Barth, 178 La. 847, 152 So. 543, 546, 91 A. L. R. 408, the son brought a suit to annul the will of his father on the ground that he was a forced heir of the testator, who left his entire estate to his widow, and that this was an attempt on his father's part to disinherit his only son and was null for want of a cause for the disinheritance of a forced heir. The court said, 178 La. 847, at page 858, 152 So. 543, 91 A. L. R. 408,

"We do not find any merit in the plaintiff's contention that the will of Nicholas J. Barth is null because it was an attempt to disinherit a forced heir without a legal cause for disinheritance. If the plaintiff is, as he alleges, the forced heir of the deceased, the disposable portion of the estate was only two-thirds. Rev. Civ. Code, art. 1493. But a will by which the testator attempts to dispose of more than the disposable portion of his estate is not

null, but only reducible to the disposable portion. Rev. Civ. Code, art. 1502."

In Risher v. Risher, 179 La. 1, at page 7, 153 So. 1, 2, the court said:

"Mary Edith Risher is also made a party defendant to this suit, for the reason that petitioners contend that they, and their brother and sister, are forced heirs to two-thirds of the estate of decedent, and that, as the special legacies in the will exceed the disposable portion, these bequests are null.

"This contention is without merit, as it is specifically provided in article 1502 of the Civil Code that: 'Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.'"

In Succession of Harris, 179 La. 954, 155 So. 446, 449, we said:

"But a forced heir may ratify a testamentary disposition made to his prejudice, and such ratification will thereafter estop him from contesting the validity of the donation."

See articles 11 and 1502, Rev. Civ. Code.

It thus appears that this court has consistently held that when a testator undertakes to disinherit a forced heir and disposes of the estate to his prejudice, the testator has done nothing except to make a disposition of property mortis causa, exceeding the quantum he may legally dis-

pose of to the prejudice of forced heirs; that an attempted disinherison of a forced heir and bequeathing the entire estate to some one else does not strike the testamentary dispositions with nullity, but merely subjects these donations mortis causa to an action for the reduction thereof by a forced heir whose legitime has been ignored or impaired; and that such an action is barred by prescription of five years.

▓ There is nothing reprehensible or unfavored in a plea of prescription.

In Succession of Dauphin, 112 La. 103, at page 142, 36 So. 287, the court cites with approval from McKown v. Whitmore, 31 Me. 448, the following language:

"Statutes of limitation are vital to the welfare of society, and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity, and punish negligence. While time is contantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." 112 La. 103, 142, 36 So. 287, 300.

The cases cited by plaintiffs where dispositions mortis causa have been held to be absolute nullities and imprescriptible are clearly to be differentiated from the instant case.

In Provost's Heirs v. Provost, 13 La. 574, there was a prohibited substitution which has always been held utterly repugnant to the public policy of this state.

In Cox v. Lea's Heirs, 110 La. 1030, 1034, 35 So. 275, the will in question was in fact not a will at all because the testator had not signed it.

In the cases of Succession of McCloskey, 52 La. Ann. 1122, 1125, 27 So. 705; McCutcheon v. McCutcheon, 15 La. Ann. 511; there was no question at all of prescription or of whether or not the nullities were absolute. The attack was seasonably made.

In the cases of Lagrange v. Barré, 11 Rob. 302, and of Kirby v. Kirby, 176 La. 1037, 147 So. 70, there were donations inter vivos of all of the donor's property, which has always been held null, because otherwise such donor would become a public charge. The reason why such a donation is imprescriptible is because it cannot be ratified, the ratification would be but another effort at total divestiture, and so on until the death of the donor.

▓ It is our opinion that a plea of prescription of five years applies in bar of the right of a forced heir to recover his legitime, where his father's will denied him any participation in his estate and bequeathed his entire estate to others.

It is conceded that the period from the date of the death of Marshall Smith, Jr., until the date this suit was filed was in

excess of five years, and that all the plaintiffs were majors during the entire time, consequently, their suit must be dismissed.

For the reasons assigned, the judgment appealed from is affirmed.