1 So.2d 513

**DRAPER v. VAN LEER.**

No. 36027.

March 3, 1941.

Rehearing Denied March 31, 1941.

Dickson & Denny, of Shreveport, for appellant.

Hussey & Smith, of Shreveport, for. appellee.

HIGGINS, Justice.

This is an action by an alleged forced heir or son of his deceased father by his second marriage against his half-sister, the only issue of the deceased's first marriage, who was named as sole heir and universal legatee under his last will and testament, to reduce the excessive donation mortis causa which impinged upon his légitime. The defendant pleaded five years' prescription under Article 3542 of the Revised Civil Code, and from a judgment sustaining this defense and rejecting the plaintiff's demands, he has appealed.

Our learned brother below has written an opinion in which he correctly states the facts of the case and properly applies the law pertinent thereto, as follows:

"Charles Draper died in July, 1924, while temporarily in Cuero, Texas. By a last will and testament the deceased named his daughter, Mrs. Harriet D. Van Leer, his sole heir and appointed her as his executrix. The will was filed and probated on July 29, 1924, and Mrs. Van Leer, a resident of Washington D. C., qualified as executrix. The succession was administered, the property advertised and sold to pay debts of the succession, and finally

Mrs. Van Leer was placed in possession of the remainder of the property on March 3, 1925, by judgment of the First Judicial District Court.

"On February 19, 1940, the present suit was filed by the plaintiff, who alleges that he is the son of Charles Draper and Mary Louise Smith Draper, the second wife of Charles Draper. That he was born in Thomasville, Georgia, on March 3, 1911, and that Charles Draper and his mother were divorced July 8, 1911. It is also alleged that his mother died in 1912, and that thereafter he lived with his aunt and uncle, Mr. and Mrs. C. D. McGibney and adopted the name of Monroe D. McGibney. Plaintiff attacks the validity of the proceedings in the Succession of Charles Draper. He avers that he received no notice of the death of his father or of the succession proceedings until December 1, 1939.

"In his original and supplemental petitions it is alleged that Mrs. Van Leer knew of plaintiff's existence and place of residence but withheld this fact from the court. Plaintiff alleges diligence in his efforts to locate his father.

"The plaintiff prays to be recognized as owner of one-half interest in all property now owned by Mrs. Van Leer, which was received from the succession; a personal judgment for one-half of all revenues received by her and for penalties for failure to comply with certain requirements of the Code in the administration of the succession.

"No attack is made on the validity of the will of Charles Draper, and we can

construe this action in no other way than one for the reduction of a donation which encroached on the légitime of the plaintiff. There is no other remedy given the forced heir whose legitimate portion has been disposed of by a valid last will and testament. (Succession of Smith, 182 La. 389, 162 So. 21.) (Parenthesis ours).

"After filing several pleas and exceptions the defendant filed her answer in which the essential allegations of plaintiff's petition were denied. '

"Charles Draper was married twice. The defendant, Mrs. Van Leer, was the only child of the first marriage. Subsequently, Charles Draper married the mother of the plaintiff. At the time of this marriage Charles Draper was approximately 74 years of age, and his wife was 33. The marriage took place in Kalamazoo, Michigan, was beset with trouble almost from the beginning, and a few months thereafter suit for divorce was instituted by Charles Draper.

"It was alleged in the cross-bill filed by the wife in the divorce suit that the plaintiff owned considerable property in the vicinity of Shreveport and was worth in the neighborhood of $300,000. It was alleged that she was soon to become a mother and custody of the child was prayed for by the defendant. This was one of the sources of trouble as Charles Draper consistently denied that he was the father of this child. In the final decree of divorce Mrs. Draper settled for $300, with no provision being made for the support of the child. The record is barren of any effort ever being made to obtain any assistance from Mr. Draper.

"The plaintiff was born in Thomasville, Georgia, but his mother immediately returned to Kalamazoo, Michigan, and made her home with Mr. and Mrs. C. D. McGibney. Shortly thereafter she committed suicide. The child continued to live with his aunt and uncle and became known as Monroe McGibney. In 1921, the McGibneys moved to Detroit, Michigan, where they lived until 1930, when they returned to Kalamazoo. The plaintiff in this suit was living with them during this period and continued using the name of Monroe McGibney.

"In the course of the succession proceedings an attorney for absent heirs was appointed by the court, and we must presume in the absence of testimony to the contrary that he did his duty and made every effort to contact the absent heir. In the light of the facts developed in this case the allegations justifying the appointment of the attorney are significant, and his failure to locate an absent heir is understood. It was alleged as follows:

" 'While there is no certainty of there being any other heirs interested in this succession, it is advisable that an attorney be appointed to represent such absent heirs, if any'.

"On December 30, 1924, the attorney was appointed. It was not until March 11, 1925, that the universal legatee was placed in possession of the property remaining in the succession. The present suit was filed February 19, 1940, or eight

years after the plaintiff had attained his majority, since he became of age on March 3, 1932.

"One of the exceptions filed by defendant was a plea of prescription based on Article 3542 of the Revised Civil Code, which provides that an action to reduce an excessive donation prescribes in five years. This plea was referred to the merits for the reason that plaintiff alleged diligence on his part and fraud and concealment of Mrs. Van Leer, the universal legatee and defendant herein. There were many issues raised in this proceeding, but our conclusion that the plea of prescription under Article 3542 should be sustained makes it unnecessary to consider the other phases of this case.

"The following articles of our Revised Civil Code, we think, are controlling:

" '1502. Donations above disposable portion—Reduction.—Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.'

" '1504. Reduction of donation—Suit for—Forced heirs.—On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.'

" '3542. The following actions are prescribed by five years:

＿ * * * * *

" 'That for the reduction of excessive donations.

* * * * *

" 'This prescription only commences against minors after their majority.'

"The plaintiff contends in brief that this prescription is not applicable to a forced heir who is seized of right at the death of the testator of all of the effects of the succession, citing Articles 1607 and 1608 of the Civil Code. It is further argued that because defendant never made a judicial demand on plaintiff for delivery of the portion which he was seized of right, that prescription did not begin to run under the provisions of those articles. We quote herewith Articles 1607 and 1608:

" '1607. Forced heirs—Seizin on death of testator—Demand by universal legatee. —When, at the decease of the testator, there are heirs to whom a certain proportion of the property is reserved by law, these heirs are seized of right, by his death, of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament.'

" '1608. Universal Legatee—Enjoyment of effects—Demand for delivery.—Nevertheless in the same case, the universal legatee will have the enjoyment of the effects included in the testament, from the day of the decease, if the demand for the delivery has been made within a year from that period; if not, enjoyment will only commence from the day of the judicial demand, or from the day on which the delivery has been agreed upon.'

"The Supreme Court of Louisiana in the case of Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175, had this same question presented. Justice Monroe was the organ of the court, on page 579 [of 105 La., on page 213 of 30 So.] said:

" 'The rule le mort saisit le vif is thus expressed in the Revised Civil Code: "Art. 940. A succession is acquired by the legal heir, who is called by law to the inheritance immediately after the death of the deceased person whom he succeeds. This rule applies also to testamentary heirs, to instituted heirs, and universal legatees, but not to particular legatees." It will be observed that the application of this article is not confined to legal heirs, and still less to forced heirs, but that it applies as well to testamentary heirs, other than particular legatees, from which it follows, construing its provisions with those of articles 1502, 1504, and 3542, that the testamentary donation of an entire estate, including the legitime of the forced heir, *confers a title upon the donee, which may be reduced pro tanto at the suit of the forced heir, or of his heirs or assigns, provided such suit is brought within five years.* Upon the other hand, counsel for plaintiffs invoke article 1607 et seq., and insist that under their provisions, as construed with those of article 940 et seq., there is and can be no necessity for a suit by the forced heir to establish title to his legitime, and hence that there can be no such thing as prescription against such title. * * *' (Italicizing ours.)

"After reviewing the French authorities and pointing out the difference in the French Civil Code and the Louisiana Revised Civil Code, the court concluded its opinion on this question at page 581 (*582 [of 105 La., on page 214 of 30 So.]) with the following statement:

" 'Whatever, therefore, may be the views of the French writers as to the proper interpretation of the French Code, and however well founded, there can be no doubt that the Civil Code of this state has been interpreted to mean that the ownership and seisin of the forced heir is so far qualified that the testamentary donee of an interest including or impinging upon his legitime may lawfully hold possession as owner until such forced heir demands the reduction of the donation. And we are not prepared to reverse the jurisprudence to that effect.'

"The court reviews a number of decisions on this question which we will not quote here, but will be found on pages 580 and 581 of the above-mentioned case [in 105 La., 30 So. 175].

"Prescription begins to run against an action to reduce an excessive donation on the date that the testament is filed for probate. This rule was established in the recent case of Succession of Dancie, 191 La. 518, 186 So. 14, [19], wherein the court was called on to fix the period when prescription would begin to run against an action for the reduction of a donation that exceeded the disposable portion. It is to be noted that Article 3542 does not fix this period. The court in the Dancie case said:

" '* * * On the contrary, there is reason and precedent to support the view that

the cause of action arises when the will is probated. The reason is that, when a will is probated, there is spread on the public records a proceeding which makes it definitely known that the deceased has left a last will, who the testamentary heir is, who is entitled to the benefits conferred by the will, the quantum of the estate disposed of, and the name of the person appointed to carry out the provisions of the will. The proceeding provides the forced heir with all the information necessary to enable him to prepare his suit to reduce the disposition to the disposable quantum. He is left in no doubt as to the person against whom his action must be brought. His right to demand a reduction accrues when the will is proved before a competent tribunal, recognized as valid, and its execution is ordered.'

"In the above decision there will be found an exhaustive review of the jurisprudence on this question.

"In the case at bar prescription began to run against plaintiff on March 3, 1932, which was the date that he attained his majority. His action for a reduction of this donation was barred five years thereafter, as provided by Article 3542, unless the prescription is interrupted or suspended for some reason. (Succession of Smith, 182 La. 389, 162 So. 21.) (Parenthesis ours.)

"The plaintiff alleges the exercise of diligence in trying to locate his father, and fraud and concealment on the part of the defendant, Mrs. Van Leer. These allegations, if proven, would have the effect of

exempting plaintiff from the prescription under Article 3542 of the Revised Civil Code. The rule was stated in Cox v. Von Ahlefeldt, supra [105 La.] on page 586 [30 So. on page 216], as follows:

" '* * * Those who claim exemption from prescription by reason of ignorance resulting from fraud must allege and show that such ignorance was neither willful nor negligent.'

"Mrs. Van Leer was unusually frank and fair in her testimony. She made a complete disclosure to her attorney as to the possibility of her father having another child. It was shown that efforts were made by him to trace the child. Mrs. Van Leer's sister communicated with friends who had known plaintiff's mother during her first marriage in an unsuccessful attempt to locate her. Mrs. Van Leer never knew the second wife of her father and according to her testimony she had never heard of anyone by the name of McGibney. All of the facts were given to her attorney, who was admittedly a prominent member of the bar and in good standing. The failure of the attorney for absent heir or the attorney for the succession to locate the plaintiff in this case is readily understood in the light of the facts developed on the trial of the case.

"According to the testimony Mrs. Van Leer was married and raising her family in Washington, D. C., at the time her father who was 74 years of age was married the second time. He did not discuss his business or personal affairs with his daughter and very seldom saw her. The marriage lasted only a few months and

resulted in considerable controversy between Mr. Draper and his wife as to the legitimacy of the child born prior to the final divorce. After the judgment of divorce, which did not order Charles Draper to support the child, the mother committed suicide and the child was raised in the home of an aunt and uncle and under a different name than that used in the prosecution of this suit, and during this period they were living in Detroit, Michigan. According to the testimony of Mrs. Van Leer, her father had denied being the father of a child, being 74 years of age, and also expressing doubt that a child had even been born to his former wife.

"There was nothing secretive about the succession proceedings as conducted by Mrs. Van Leer. There were advertisements to sell the succession property, notices of the filing of the tableau of debts and of the filing of the final account, all of which were duly published.

"In addition to our conclusion that no fraud or concealment on the part of Mrs. Van Leer has been shown, we are satisfied that no effort was made by plaintiff to locate Charles Draper or to investigate his succession.

"Plaintiff testified in response to interrogatory No. 7, that he had never attempted to locate his father or to ascertain if he had any property. And in response to other interrogatories it was stated by him that the first information of the death of Charles Draper and the succession proceedings was given to him by Mr. and Mrs. C. D. McGibney in the latter part of 1939.

"Interrogatories were propounded to Mrs. Louise Bixby Maloney, a first cousin of plaintiff's mother, and also of Clyde McGibney. It was stated by her that she was a neighbor of the McGibneys while living in Detroit between 1921 and 1928. She testified that she knew about the death of Charles Draper at the time he died. We quote herewith Interrogatory No. 12 and the answer of the witness to same:

"'Were you ever informed or learned that Charles Draper died in the State of Texas and that his Succession had been opened in Shreveport, Caddo Parish, Louisiana?'

"'A. I was informed at the time his occurred. However, have had no further information until recently.'

"It is quite inconceivable that a relative and neighbor of the McGibney's and plaintiff would have known of the death of Charles Draper and the fact not be transmitted to plaintiff.

"Clyde McGibney, the uncle of plaintiff, testified in response to Interrogatory No. 17, that no efforts had even been made to ascertain if Charles Draper had any property until the present litigation. He was familiar with the divorce wherein it was alleged by plaintiff's mother that Charles Draper was very wealthy and owned considerable property near Shreveport, Louisiana. In answer to one of the cross-interrogatories Mr. McGibney stated that Charles Draper and the mother of plaintiff had visited in Shreveport.

"All these facts satisfy us that evidence was available to the plaintiff had he used any

diligence in locating or determining whether his father was dead. The reason is frankly stated by plaintiff in response to Interrogatory No. 7 that he never made any inquiry. It was definitely known by all that Mr. Charles Draper was past 70 years of age at the time of his marriage. When the plaintiff became of age in 1932 his father, if living, would have been past 90. His failure to investigate and inquire certainly does not indicate diligence, but on the contrary is evidence of willful neglect where the means of knowledge was available to him.

"For the reasons assigned, the plea of prescription of five years based on Article 3542 of the Revised Civil Code is sustained and the demands of the plaintiff are rejected.

"Plaintiff to pay all costs of this proceeding."

▆ Counsel for the plaintiff, in his brief and argument in this court, has taken issue with the finding of the district judge that his client was guilty of neglect in not making inquiry when means of knowledge were readily at hand and that the defendant was free from any fraud or concealment, which caused the plaintiff to delay in asserting his alleged rights. We have carefully read the record and have reached the same conclusion as did the trial judge, for it appears that the defendant made a full revelation of the facts in the matter to the attorney who handled the succession and that the proceedings were carried on publicly in the legal and customary way.

We find nothing which would indicate that the defendant was acting in bad faith and the suggestion that she schemed to get the property from the succession for herself is answered by the fact that there were considerable debts which had to be paid before it could be free of mortgages and encumbrances and that the defendant had the property sold at public auction to pay those obligations. Later she acquired the property from her sister who was the adjudicatee.

▆ The attorney for the plaintiff states that prescription did not run because the plaintiff as a forced heir was not notified of the probate proceedings. Counsel for the defendant has referred us to the Succession of Dancie, 191 La. 518–539, 186 So. 14, to show that, as the plaintiff did not reside in Caddo Parish, it was unnecessary to notify him directly or through an attorney appointed by the court of the probate of the will. Even if the law required that plaintiff, as a forced heir and nonresident, be notified of the probate of the will through an attorney, it is sufficient to state that such an attorney was appointed immediately after the will was probated and that the remainder of the succession proceedings were carried on contradictorily with him. Surely prescription began to run thereafter. The plaintiff is not asking for the annullment of the will, but is simply claiming a half interest in the property as a forced heir and is asking for an accounting for half of the revenues. Such a suit has been held to be an action for the reduction of an excessive

donation, which is prescribed in five years. Succession of Smith, supra, and authorities therein cited.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court be and the same is hereby affirmed at appellant's costs.

PONDER, J., absent.